Andrew Roman Perrong, OSB No. 243320
a@perronglaw.com
Perrong Law LLC
2657 Mount Carmel Avenue
Glenside, PA 19038
215-225-5529
Attorney for Plaintiff and the Proposed Class

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF OREGON
# PORTLAND DIVISION

| | |
|---|---|
| **JESSICA MURCH,** individually and on behalf of all others similarly situated,<br><br>*Plaintiff,*<br><br>v.<br><br>**Compass Washington, LLC,**<br>**Compass, Inc.,**<br>**Rachel Olson, and**<br>**Ansel Sanger**<br><br>*Defendants.* | Case No.<br><br>3:25-cv-1039<br><br>FIRST AMENDED<br>CLASS ACTION COMPLAINT<br>TCPA (47 U.S.C. § 227)<br>DEMAND FOR JURY TRIAL |

**FIRST AMENDED CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff Jessica Murch ("Plaintiff" or "Ms. Murch") brings this First Amended Class Action Complaint and Demand for Jury Trial against Defendants Compass Washington, LLC, Compass, Inc., Rachel Olson, and Ansel Sanger, and alleges as follows:

1. Telemarketing calls are intrusive. A great many people object to these calls, which interfere with their lives, tie up their phone lines, and cause confusion and disruption on phone records. Faced with growing public criticism of abusive telephone marketing practices, Congress enacted the Telephone Consumer Protection Act of 1991. Pub. L. No. 102-243, 105 Stat. 2394 (1991) (codified at 47 U.S.C. § 227). As Congress explained, the law was a response to Americans 'outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers' *id.* §

2(6), and sought to strike a balance between '[i]ndividuals' privacy rights, public safety interests, and commercial freedoms' *id.* § 2(9).

2. "The law opted for a consumer-driven process that would allow objecting individuals to prevent unwanted calls to their homes. The result of the telemarketing regulations was the national Do-Not-Call registry. *See* 47 C.F.R. § 64.1200(c)(2). Within the federal government's web of indecipherable acronyms and byzantine programs, the Do-Not-Call registry stands out as a model of clarity. It means what it says. If a person wishes to no longer receive telephone solicitations, he can add his number to the list. The TCPA then restricts the telephone solicitations that can be made to that number. *See id.*; 16 C.F.R. § 310.4(b)(iii)(B) ('It is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer to . . . initiat[e] any outbound telephone call to a person when . . . [t]hat person's telephone number is on the "do-not-call" registry, maintained by the Commission.')…Private suits can seek either monetary or injunctive relief. *Id*…This private cause of action is a straightforward provision designed to achieve a straightforward result. Congress enacted the law to protect against invasions of privacy that were harming people. The law empowers each person to protect his own personal rights. Violations of the law are clear, as is the remedy. Put simply, the TCPA affords relief to those persons who, despite efforts to avoid it, have suffered an intrusion upon their domestic peace." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 649-50 (4th Cir. 2019).

3. The Plaintiff brings this action to enforce the consumer-privacy provisions of the TCPA alleging that Compass violated the TCPA by making telemarketing calls to Plaintiff and other putative class members listed on the National Do Not Call Registry without their written consent.

## PARTIES

4. Plaintiff Jessica Murch is an individual residing in Clackamas County.

5. Defendant Compass, Inc. is a Delaware corporation with its headquarters and principal place of business in New York.

6. Defendant Compass Washington, LLC is a Delaware corporation with its headquarters and principal place of business in Washington.

7. Defendant Rachel Olson is an individual agent of Compass who resides in Kirkland, Washington, and who dialed and spoke to the Plaintiff on multiple of the illegal calls at issue, including to Plaintiff's 503- area code number.

8. Defendant Ansel Sanger is an individual agent of Compass who resides in Seattle, Washington, and who dialed and spoke to the Plaintiff on multiple of the illegal calls at issue, including to Plaintiff's 503- area code number.

## JURISDICTION AND VENUE

9. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 47 U.S.C. § 227 *et seq*.

10. This Court has specific personal jurisdiction over Defendants because they directed their illegal conduct to Oregon residents, including Oregon residents with 503- area codes, like Plaintiff.

11. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial portion of the conduct alleged herein–the receipt of illegal telemarketing calls–was received in this District.

## BACKGROUND

**A.     The TCPA Prohibits Calls to Numbers on the National Do Not Call Registry.**

12.     The TCPA prohibits making multiple telemarketing calls to a residential telephone number that has previously been registered on the National Do Not Call Registry. *See* 47 U.S.C. § 227(c)(5).

13.     The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

14.     A listing on the National Do Not Call Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id.*

15.     The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers on the Registry and provide a private right of action against any entity that makes those calls, or "on whose behalf" such calls are promoted. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

**B. The TCPA Also Requires Telemarketers to Transmit Caller Identification Information Including the Telemarketer's Name.**

16.     The TCPA requires any "person or entity that engages in telemarketing" to "transmit caller identification information." 47 C.F.R. § 64.1601(e).

17.     The relevant regulation defines "caller identification information" as "either CPN or ANI, and, when available by the telemarketer's carrier, the name of the telemarketer." 47 C.F.R. § 64.1601(e)(1).

18.     A violation of this subsection of the TCPA is enforceable under the private right of action provided for under 47 U.S.C. § 227(c)(5)'s private right of action. *Dobronski v. Selectquote Ins. Servs.*, No. 2:23-CV-12597, 2025 WL 900439, at *3 (E.D. Mich. Mar. 25, 2025).

**FACTUAL ALLEGATIONS**

19. The Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

20. At no point did the Plaintiff consent to receiving telemarketing calls from the Defendants prior to receiving the calls at issue.

21. Plaintiff's telephone number, (503) XXX-XXXX, is a residential, non-commercial telephone number.

22. Ms. Murch uses the number for personal, residential, and household reasons.

23. Ms. Murch does not use the number for business reasons or business use.

24. The number is a residential telephone line because it is assigned to a residential telephone exchange service for consumers and is not assigned to a telephone exchange service for businesses.

25. Plaintiff's telephone number has been listed on the National Do Not Call Registry more than 31 days prior to the calls at issue.

26. Plaintiff has never been a customer of Compass and never consented to receive calls or text messages from Compass.

27. Under the TCPA, as confirmed by the Supreme Court, text messages are "calls" for the purposes of the TCPA. *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 153 (2016).

28. Despite that fact, on August 14, 2024, the Plaintiff received at least four calls from Rachel Olson personally, from the telephone number 206-794-1045. Ms. Olson stated that she was a Realtor, asked the Plaintiff if she was looking to sell her house, and further stated that she could help the Plaintiff relocate.

29. Plaintiff instructed Ms. Olson not to call her, but rather to email the pertinent information for her to review if she was interested.

30. Thereafter, Ms. Olson personally sent the Plaintiff at least five text messages offering to list the Plaintiff's home, and to relocate. The Plaintiff ultimately responded to those

messages on August 29, 2024 stating, "`Compass, do not call us or e-mail again, I am sorry.`"

      31.     Upon information and belief, Ms. Olson is a broker with Defendant Compass Washington, LLC, the subsidiary company of Compass, Inc., the national real estate firm.

      32.     In so doing, the Plaintiff made a company-specific do not call request.

      33.     Despite making a company-specific do not call request, on September 11, the Plaintiff received yet another call from "Leah," calling from the number 425-464-7241, who stated that she was with "Compass Realty" and was calling about listing the same property that Ms. Olson had indicated she was interested in listing for Plaintiff. The Plaintiff stated that she thought that she was pretty clear that she no longer wanted to receive calls from Compass and didn't want to talk to Compass, and reiterated her internal do not call request.

      34.     The Plaintiff continued to receive calls, including on May 13, 2025 from an individual named "Anella" with Compass from the phone number 425-296-9832 and was calling about listing the same property for sale that Ms. Olson had indicated she was interested in listing for Plaintiff. The Plaintiff hung up because she had trouble hearing "Anella."

      35.     The Plaintiff received two final calls on June 5, 2025 from Ansel Sanger personally, who stated that he was with Compass Real Estate and was looking to help the Plaintiff sell the same house that Ms. Olson had indicated she was interested in listing for Plaintiff. These calls came from 206-390-2137, and the Plaintiff had indicated that she spoke with Ms. Olson previously and had likewise made a company-specific do not call request and inquired as to why she continued to receive calls.

      36.     Thereafter, Mr. Sanger apologized.

      37.     Upon information and belief, Mr. Sanger is also a broker with Defendant Compass Washington, LLC, the subsidiary company of Compass, Inc., the national real estate firm.

      38.     The text messages and call were plainly sought to encourage the Plaintiff to list a house for sale with the Defendants' real estate agents.

39. Plaintiff does not own the subject property, and did not request the Defendants' services.

40. The aforementioned calls and text messages were all made seeking to solicit the Plaintiff to use the Defendants' real estate agents in the sale of a home, as well as ancillary real estate services.

41. The Compass Defendants operate a real estate brokerage that sell houses through individual or group brokers and agents, including those like Defendants Olson and Sanger.

42. The Compass Defendants provide control over Defendants Olson and Sanger to market homes using the Compass brand.

43. The text messages all came from the following numbers. Counsel for the Plaintiff has access to "dip" the Caller ID database of the calling carrier to ascertain the CNAM information to ascertain (1) whether caller name delivery (CNAM) is available with the Defendant's calling carrier, and (2) whether such CNAM information contained the name of the telemarketer. The results of those dips are as follows:

| Number | CNAM Available? | CNAM Result | Carrier |
|---|---|---|---|
| 5033799719 | Y | OLSON,RACHEL | TWILIO |
| 4254647241 | Y | FALL CITY WA | ONVOY |
| 4252969832 | Y | KIRKLAND WA | LEVEL 3 |
| 2063902137 | Y | SANGER ANSEL | AT&T |

44. As the aforementioned chart shows, the CNAM transmitted by the Defendants' ultimate telephone carriers, Twilio, sometimes provided accurate CNAM functionality, but for other numbers, the CNAM functionality transmitted a geographic location, and not the Defendants' name or telemarketer's name.

45. Both Onvoy and Level 3, like AT&T and Twilio, provide their customers and any resellers the ability to set the CNAM result accurately to reflect their own name as desired, but if the customer does not elect such a CNAM, their default CNAM customer setting is to transmit

the geographic location of the telephone exchange for the calling telephone number, and not the caller's name, as occurred here.

46.   It is not possible to call any of these numbers back, to lodge a Do Not Call request during regular business hours, because Plaintiff did so and her request was not honored.

47.   As such, the caller ID information transmitted along with the calls did not transmit a telephone number that permits "any individual to make a do-not-call request during regular business hours."

48.   Plaintiff did not recognize Compass, is (and was) not selling any home, and was not looking to sell her home. In fact, the Plaintiff does not own a home.

49.   Moreover, Plaintiff does not own the home referenced in the calls and never did.

50.   Defendants' websites, https://www.compass.com/, https://www.compass.com/agents/rachel-olson1/, and https://www.compass.com/agents/ansel-sanger/, explain that Mr. Sanger and Ms. Olson are the Defendants' real estate agents that can help people buy and sell houses.

51.   The aforementioned website also advertises numerous services typically offered by real estate agents, as well as homes for sale.

52.   Defendants sell their services through their licensed real estate agents by telephone and text messages and are compensated for their services as all other real estate agents: after providing services to facilitate the transaction, receiving a commission based on the sales price.

53.   The Compass Defendants ratified Olson and Sanger's conduct by accepting the lead and referrals generated as a result of Olson and Sanger's illegal telemarketing conduct for some of the calls at issue, and by continuing to market to Plaintiff, despite a company specific internal Do Not Call Request.

Am. Complaint                                        8

54.     For more than twenty years, the FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In re Rules and Regulations Implementing the Telephone Consumer Protection Act*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

55.     In 2008, the FCC likewise held that a company on whose behalf a telephone call is made bears the responsibility for any violations.

56.     The FCC has instructed that sellers such as Compass may not avoid liability by outsourcing its brokerage services and telemarketing to third parties, such as Olson and Sanger:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment, limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "sellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

*In re DISH Network, LLC*, 28 FCC Rcd. 6574, 6588 ¶ 37 (2013) (cleaned up).

57.     In 2013, the FCC held that a corporation or other entity that contracts out its telephone marketing "may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *Id.* at 6574 ¶ 1.

58.     Compass is liable for any telemarketing calls placed by Olson and Sanger and using Compass's name to generate customers for Compass, including the Plaintiff.

59.     Compass hired, encouraged, permitted, and enjoyed the benefits of telemarketing by agents such as Rachel Olson and Ansel Sanger.

60.     The contracts between Olson, Sanger, and Compass, contain multiple indicia of actual authority because Compass retained the right to direct and control the manner and means of Olson's and Sanger's marketing and solicitation. Specifically, the Independent Contractor

Agreements executed by Compass state that agents perform services "on behalf of Broker" and provide real estate brokerage services "for Broker." Compass provided substantial financial incentives to agents, including commission splits, Cash Affiliation Incentives, Marketing Budgets totaling thousands of dollars, and equity awards in Compass stock. Compass required that all marketing materials utilize "Broker-branded signs, business cards, logos" and that any marketing expenses be "subject to approval and reimbursement in Broker's sole and reasonable discretion."

61. Indeed, Compass also provided a launch marketing budget to pay for marketing and advertising.

62. However, Compass only allowed those marketing budgets to be used "in accordance with Broker's policies and procedures," and any agent-incurred marketing expenses were "subject to approval and reimbursement in Broker's sole and reasonable discretion."

63. Compass likewise mandated that all advertisements comply with all Compass marketing and branding policies and guidelines.

64. Compass also expressly regulated "digital and electronic marketing or solicitation (including, but not limited to, email and telephone)" and required agents to "comply fully with all applicable laws and rules" in its agent manuals.

65. The calls at issue identified Compass as the organization on whose behalf Olson and Sanger acted.

66. Accordingly, Olson and Sanger had actual and/or apparent authority to act on behalf of Compass. Compass acted as principal to Olson and Sanger, who acted as Compass's agents.

67. The Compass Defendants also clothed Olson and Sanger with apparent authority by prescribing public-facing titles and requiring Compass-branded identification in marketing, going so far as to require that Compass be clearly and conspicuously identified in all advertising.

68. These Compass-authored directives invite and are designed to ensure that consumers understand Olson's and Sanger's advertising as coming from "Compass," i.e., from agents acting with Compass' authorization and branding.

69. Indeed, Olson and Sanger are prominently featured on Compass' website as Compass' agents.

70. Compass ratified Olson's and Sanger's conduct by learning of the calls to Plaintiff, investigating the circumstances, and taking no corrective action. In discovery responses, Compass admitted that "Prior to the filing of the Complaint, Rachel Olson and Ansel Sanger have not been reprimanded, disciplined, or otherwise warned concerning their outbound calling or texting practices."

71. Compass further warns that an agent who unlawfully solicits risks being disassociated from Compass or subject to any other disciplinary action to be determined in Compass's sole discretion, but Compass did nothing.

72. The Compass Defendants' financial and branding structure further supports ratification. Compass reserves the right to "recoup" advertising, marketing or other expenses, spent by Compass on behalf of the Agent.

73. Rather than disavowing the calls as unauthorized, Compass defended them.

74. By learning of the calls, taking no disciplinary action, and affirmatively justifying the conduct while continuing to receive commissions and fees from transactions procured through such calling activities, Compass ratified Olson's and Sanger's TCPA violations.

75. Olson and Sanger are directly liable for the unlawful calls at issue as they, or other employees subject to their control, directly placed the underlying calls.

76. Compass controlled the day-to-day activities of Olson and Sanger by allowing them to work up real estate deals using the Compass brand name.

77. Compass also could have prohibited Olson and Sanger from generating leads based on calls placed to numbers on the Do Not Call Registry, let alone using illegal caller ID information and to individuals who requested no dealings with Compass.

78. It did not.

79. Finally, Compass could have terminated Olson and Sanger once it learned of Olson and Sanger's illegal marketing conduct.

80. It did not.

81. A reasonable seller would investigate into the reasons why their agents would be calling numbers using highly illegal calls to numbers on the Do Not Call Registry, let alone as to why it was using illegal caller IDs to place the calls, let alone to individuals who made a company-specific do-not-call request.

82. It did not.

83. Compass hired Olson and Sanger without a proper investigation and did not terminate them when they were informed of Olson and Sanger's illegal calling conduct.

84. As such, they knowingly ratified Olson and Sanger's conduct.

85. The 2013 FCC ruling holds that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *In re DISH Network*, 28 FCC Rcd. 6592-93 ¶ 46. Evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 ¶ 46.

86. Defendants Olson and Sanger may be personally liable for the acts alleged in this Complaint pursuant to 47 U.S.C. § 217 of the TCPA, which reads, *inter alia*: "[T]he act, omission, or failure of any officer, agent, or other person acting for or employed by any common carrier or user, acting within the scope of his employment, shall in every case be also deemed to be the act, omission, or failure of such carrier or user *as well as of that person*." 47 U.S.C. § 217 (emphasis added).

87. Olson and Sanger personally directed the TCPA-violative conduct at issue because they personally went off and called the Plaintiff, and Olson expressly ignored and did not forward the Plaintiff's company-specific internal Do Not Call request.

88.   The purpose of the calls at issue were to advertise and to market Defendants' real estate services.

89.   The purpose of the calls was sent to solicit the Plaintiff to sign up for the Defendants' products and services.

90.   The calls therefore constituted unlawful telemarketing.

91.   The calls were unwanted.

92.   The calls were nonconsensual encounters.

93.   Plaintiff's privacy has been repeatedly violated by the above-described telemarketing calls.

94.   Plaintiff never provided her consent or requested the calls.

95.   Plaintiff and the Classes have been harmed by the acts of Defendants because their privacy has been violated and they were annoyed and harassed. In addition, the calls occupied their telephone lines, storage space, battery life, wear and tear, and bandwidth, rendering them unavailable for legitimate communication, including while showering, getting ready for work, driving, working, and performing other critical tasks.

## CLASS ACTION ALLEGATIONS

96.   Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully stated herein.

97.   Plaintiff brings this action on behalf of herself and the following classes (the "Classes") pursuant to Federal Rule of Civil Procedure 23 and Oregon Local Rule 23-2.

> **National DNC Class:** All persons in the United States whose (1) telephone numbers were on the National Do Not Call Registry for at least 31 days, (2) but who received more than one telemarketing call from or on behalf of Defendants, (3) within a 12-month period (4) at any time in the period that begins four years before the date of filing this Complaint to trial.
>
> **Internal DNC Class:** All persons within the United States to whom: (1) Defendants (or a third-party acting on behalf of Defendants) sent (2) two or more telemarketing calls or text message calls in a 12-

month period, (3) who were not current customers of the Defendants at the time of the calls, (4) who had previously asked for the calls to stop and (5) within the four years prior to the filing of the Complaint.

**Telemarketing Caller ID Class:** All persons within the United States to whom: (1) Defendants (or a third-party acting on behalf of Defendants) sent (2) two or more telemarketing calls or text message calls in a 12-month period, (3) without the transmission of caller identification information that included either CPN or ANI and the Defendant's or telemarketer's name, or without the transmission of a CPN or ANI that could be used to make an internal do not call request during regular business hours, or both (4) within the four years prior to the filing of the Complaint.

98. Excluded from the classes are Defendants, Defendants' officers and directors, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

99. **Numerosity**: The exact number of Class members is unknown but based on the *en masse* nature of telemarketing is believed to be at least hundreds of persons at this time, and individual joinder in this case is impracticable. Class members can be easily identified through Defendants' records, or those of its agents.

100. **Typicality**: Plaintiff's claims are typical of the claims of other Class members in that Plaintiff, and Class members in each Class, sustained damages arising out of Defendants' telemarketing calls and Class members sustained similar injuries and damages as a result of Defendants' uniform illegal conduct.

101. **Adequacy**: Plaintiff will fairly and adequately represent and protect the interests of the Classes and has retained counsel competent and experienced in complex class actions to vigorously prosecute this action on behalf of the Classes. Plaintiff has no interests that conflict with, or are antagonistic to those of, the Classes, and Defendants have no defenses unique to Plaintiff.

102. **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and members of the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include, but are not necessarily limited to, the following:

   a. whether Defendants systematically made multiple telephone calls to members of the National Do Not Call Registry Classes;

   b. whether Defendants made calls to Plaintiff and members of the National Do Not Call Registry Classes without first obtaining prior express written consent to make the calls;

   c. whether Defendants made calls to Plaintiff and members of the Telemarketing Caller ID class without the transmission of caller ID required by law and;

   d. whether members of the Classes are entitled to treble damages based on the willfulness of Defendants' conduct.

103. **Superiority**: Class action treatment is superior to the alternatives for the fair and efficient adjudication of the controversy alleged herein. Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would entail. There are hundreds of Class members, such that joinder of all members is impracticable.

104. In addition to satisfying the prerequisites of FED. R. CIV. P. 23(a), Plaintiff satisfies the requirements for maintaining a class action under FED. R. CIV. P. 23(b) because:

   a. The prosecution of separate actions by the individual Class members would create a risk of inconsistent or varying adjudication which would establish incompatible standards of conduct for Defendants;

    b.  The prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them which would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests;

    c.  Defendants have acted or refused to act on grounds that apply generally to the proposed Classes, thereby making final injunctive relief or declaratory relief herein appropriate with respect to the proposed Classes as a whole; and

    d.  Questions of law or fact common to the members of the Classes predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

**COUNT I**
**Violations of the TCPA, 47 U.S.C. § 227**
**(On Behalf of Plaintiff and the National DNC Class)**

105. Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

106. It is a violation of the TCPA to initiate any telephone solicitation to a residential telephone subscriber who has registered his or her telephone number on the National Do Not Call Registry. 47 C.F.R. 64.1200(c)(2).

107. Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf violated the TCPA by causing multiple telephone solicitation calls to be initiated to Plaintiff and members of the National DNC Class in a 12-month period, despite the person's registration of his or her telephone numbers on the National Do Not Call Registry.

108. These violations were willful or knowing.

109. As a result of Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf's violations of the TCPA's national do-not-call rule, Plaintiff and members of the National DNC Class are each entitled to an injunction and up to $500 in damages for each such violation. 47 U.S.C. § 227(c)(5).

110. Because such violations were willful or knowing, the Court should treble the amount of statutory damages, pursuant to 47 U.S.C. § 227(c)(5).

## COUNT II
### Violations of the TCPA, 47 U.S.C. § 227
### (On Behalf of Plaintiff and the Internal DNC Class)

111. Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

112. The foregoing acts and omissions of Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by sending telemarketing calls, except for emergency purposes, to Plaintiff and members of the Internal Do Not Call Class despite previously requesting that such calls stop.

113. Because such violations were willful or knowing, the Court should treble the amount of statutory damages, pursuant to 47 U.S.C. § 227(c)(5).

114. As a result of Defendants' and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf, violations of the TCPA, 47 U.S.C. § 227, Plaintiff and members of the Internal Do Not Call Class are entitled to an award of up to $500 and in damages for each and every call sent and up to $1,500 in damages if the calls are found to be willful.

## COUNT III
### Violations of the TCPA, 47 U.S.C. § 227
### (On Behalf of Plaintiff and the Telemarketing Caller ID Class)

115. Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

116. It is a violation of the TCPA to make a telemarketing call without the transmission of caller identification information including either a CPN or ANI and, when available by the telemarketer's carrier, the name of the telemarketer. 47 C.F.R. § 64.1601(e)(1).

117. It is a violation of the TCPA to transmit a CPN or ANI that does not allow any individual to make a do-not-call request during regular business hours. 47 C.F.R. § 64.1601(e)(1).

118. Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf violated the TCPA by causing multiple telemarketing calls to be initiated to Plaintiff and members of the Telemarketing Caller ID Class in a 12-month period, without transmitting the name of the telemarketer, despite such option for transmission of accurate CNAM information being available by its carrier.

119. These violations were willful or knowing.

120. As a result of Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf's violations of the TCPA's telemarketing Caller ID transmission requirement, Plaintiff and members of the Telemarketing Caller ID are each entitled to an injunction and up to $500 in damages for each such violation. 47 U.S.C. § 227(c)(5).

121. Because such violations were willful or knowing, the Court should treble the amount of statutory damages, pursuant to 47 U.S.C. § 227(c)(5).

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the National DNC Class and Internal DNC Class, respectfully requests that the Court enter judgment against Defendants for:

A. Certification of the National DNC Class as alleged herein;

B. Certification of the Internal DNC Class as alleged herein;

C. Certification of the Telemarketing Caller ID class as alleged herein;

D. Appointment of Plaintiff as representative of the Classes;

E. Appointment of the undersigned as counsel for the Classes;

F. Damages to Plaintiff and members of the Classes pursuant to 47 U.S.C. § 227(c)(5);

G. Injunctive relief for the Classes, pursuant to 47 U.S.C. § 227(c)(5) preventing the Defendants from making calls to numbers listed on the National Do Not Call Registry;

H. Attorneys' fees and costs, as permitted by law; and

I. Such other or further relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all triable issues.

RESPECTFULLY SUBMITTED AND DATED this 19th day of February, 2026.

> s/Andrew Roman Perrong
> Andrew Roman Perrong, OSB No. 243320
> a@perronglaw.com
> Perrong Law LLC
> 2657 Mount Carmel Avenue
> Glenside, PA 19038
> 215-225-5529
> Lead Attorney for Plaintiff and the Proposed Class