TADJEDIN THOMAS & ENGBLOOM LAW GROUP LLP

JULIE ENGBLOOM, OSB No. 066988
juliee@ttelawgroup.com
1211 NW Glisan Street, Suite 203
Portland, Oregon 97209
Telephone: 503-546-0675
**LEAD COUNSEL**

VERA WARREN, OSB No. 194747
veraw@ttelawgroup.com
1211 NW Glisan Street, Suite 203
Portland, Oregon 97209
Telephone: 503-894-9944

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

CALON NYE RUSSELL, OR Bar No. 094910
crussell@sheppardmullin.com
4 Embarcadero Ctr, Suite 1700
San Francisco, CA 94111
Telephone: 415-774-3159

JAY T. RAMSEY, *admitted pro hac vice*
jramsey@sheppardmullin.com
1901 Avenue of the Stars
Suite 1600
Los Angeles, California 90067
Telephone: 310-228-3700

*Attorneys for Defendants*
COMPASS WASHINGTON, LLC and
COMPASS, INCORPORATED

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| JESSICA MURCH, individually and on behalf of all others similarly situated,<br><br>          Plaintiff,<br><br>   v.<br><br>COMPASS WASHINGTON, LLC, COMPASS, INC., RACHEL OLSON, and ANSEL SANGER,<br><br>          Defendants. | Case No. 3:25-cv-01039-SB<br><br>*Hon. Stacie F. Beckerman*<br><br>**DEFENDANTS COMPASS WASHINGTON, LLC AND COMPASS, INC.'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>Request for Oral Argument |

DEFENDANTS COMPASS WASHINGTON, LLC AND COMPASS, INC.'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT

-1-

TADJEDIN THOMAS & ENGBLOOM LAW GROUP LLP
1211 NW Glisan Street, Suite 203
Portland, Oregon 97209

**LR 7-1(a) CERTIFICATION**

In compliance with Local Rule 7-1(a), counsel for defendants Compass Washington, LLC, and Compass, Inc. (collectively, "Compass"), certifies that on March 12, 2026, counsel conferred in good faith with counsel for plaintiff Jessica Murch ("Plaintiff," and, together with Compass, the "Parties") to resolve the issues described in this Motion, but the Parties have been unable to resolve the issues in dispute. (Declaration of Jay T. Ramsey ¶ 3.)

**MOTION**

Compass hereby moves, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss Plaintiff's First Amended Class Action Complaint (the "FAC") for failure to state a claim. This Motion is made on the grounds that the FAC fails to allege any well-pleaded facts that plausibly establish that Compass is liable for the alleged phone calls to Plaintiff.

This Motion is based upon this Notice of Motion and Motion, the Memorandum of Points and Authorities, the Declaration of Jay T. Ramsey filed concurrently herewith, the records and files in this action, any argument that may be requested at the hearing, and any and all other matters this Court deems necessary.

**DEFENDANTS COMPASS WASHINGTON, LLC AND COMPASS, INC.'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT**

-ii-

TADJEDIN THOMAS & ENGBLOOM LAW GROUP LLP
1211 NW Glisan Street, Suite 203
Portland, Oregon 97209

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ....................................................................................................1

II.   FACTUAL AND PROCEDURAL BACKGROUND.........................................................2

III.  LEGAL STANDARD...............................................................................................5

IV.   ARGUMENT.........................................................................................................6

    A.   Compass Cannot Be Held Vicariously Liable For The Alleged Calls To Plaintiff ...........................................................................................................6

        1.   Plaintiff Fails to Establish the Existence of an Agency Relationship Between Compass and Its Real Estate Agents...............................................6

        2.   Plaintiff Fails to Establish Any of the Three Agency Theories for Liability.................................................................................................9

            a.   There Are No Facts Showing Compass Real Estate Agents Had Actual Authority to Call Numbers on the NDNCR or IDNCL .................................................................................10

            b.   There Are No Facts Showing Compass Real Estate Agents Had Apparent Authority to Call Numbers on the NDNCR or IDNCL .................................................................................11

            c.   There Are No Facts Showing Compass Ratified the Calling of Numbers on the NDNCR or IDNCL ........................................12

    B.   The TCPA's Caller ID Rules Do Not Confer A Private Right Of Action.............14

V.    CONCLUSION.....................................................................................................16

TADJEDIN THOMAS & ENGBLOOM LAW GROUP LLP
1211 NW Glisan Street, Suite 203
Portland, Oregon 97209

## MEMORANDUM

## I.    INTRODUCTION

Plaintiff Jessica Murch ("Plaintiff") is a serial-TCPA litigant who manufactured the instant lawsuit.  Despite living in Oregon, Plaintiff impersonated a Seattle homeowner to induce real estate telephone inquiries, only to turn around and sue the responding agents, Defendants Rachel Olson ("Olson") and Ansel Sanger ("Sanger"), under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(c)(2), *et seq.*[1]

Compass is confident that Plaintiff's underlying claims against Olson and Sanger are baseless and will ultimately be dismissed.  However, the present Motion focuses on a threshold pleading defect: Plaintiff's improper attempt to include Compass Washington, LLC, and Compass, Inc. (collectively, "Compass") as Defendants in this lawsuit.  Plaintiff seeks to hold Compass vicariously liable for the alleged conduct of agents Olson and Sanger, who are independent contractors.  However, the First Amended Complaint ("FAC") is devoid of any factual allegations that could plausibly support vicarious liability under any available theory (*i.e.*, actual authority, apparent authority, or ratification).  To the contrary, Plaintiff's claims are directly foreclosed by the very documents incorporated by reference in the FAC.  These documents demonstrate, indisputably, that Compass did not condone the alleged communications, and, in fact, explicitly prohibited them.  Because Plaintiff cannot plead a viable theory of vicarious liability as a matter of law, the Court should grant Compass's Motion to Dismiss and dismiss Plaintiff's claims against Compass with prejudice.

---

[1] Indeed, Plaintiff has a pattern of engaging in this same deceptive scheme—most recently in a TCPA matter brought by the same counsel before this very Court.  *See Murch v. GPS Capital Markets, LLC*, No. 3:24-cv-01854-SB, 2025 WL 2466576, at *15 (D. Or. June 6, 2025) (Beckerman, Mag. J.) ("Murch's allegations, the judicially noticeable materials, and materials incorporated by reference all support that GPS intended to call a business at a number published on the business's website and mistakenly reached Murch, ***who then lied about her identity*** and pretended to take a message for the intended business recipient." (emphasis added)).

**DEFENDANTS COMPASS WASHINGTON, LLC AND COMPASS, INC.'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT**

-1-

## II.    FACTUAL AND PROCEDURAL BACKGROUND

On June 17, 2025, Plaintiff filed her original Complaint (ECF No. 1).  She claimed that she received calls from nonparty real estate agents affiliated with Compass that violated regulations enacted under the TCPA.  The calls purportedly violated: (1) the National Do Not Call Registry ("NDNCR") regulation (47 C.F.R. § 64.1200(c)(2)) because her phone number was registered on the NDNCR when she got the calls; (2) the internal do-not-call list ("IDNCL") regulation governing company-specific requests (47 C.F.R. § 64.1200(d)), because she asked not to be called and was called again; and (3) the Caller ID regulation (47 C.F.R. § 64.1601(e)).

On August 11, 2025, Compass filed its Answer to the original Complaint (ECF No. 6).  On February 19, 2026, Plaintiff filed her FAC (ECF No. 25), adding Olson and Sanger, the real estate agents who allegedly placed the calls, to the case.  Importantly, the FAC references, for the first time, the "Independent Contractor Agreements" (FAC ¶ 60) and "agent manuals" (*id.* ¶ 64) governing Compass's relationship with its real estate agents, including Olson and Sanger.  Because Plaintiff relies on these documents in her pleading—specifically, the Independent Contractor Agreements executed by Olson and Sanger, the Broker's Terms of Engagement incorporated into those agreements, the National Agent Manual, and the Washington Agent Manual—they are thus incorporated by reference into the FAC and are appropriately referenced in this Motion.  *See United States v. Ritchie*, 342 F.3d 903, 907–08 (9th Cir. 2003) ("A court may, however, consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." (*citing Van Buskirk v. CNN*, 284 F.3d 977, 980 (9th Cir. 2002)); *Barron v. Reich*, 13 F.3d 1370, 1377 (9th Cir. 1994)).

As set forth below, the Independent Contractor Agreements, National Agent Manual, Washington Agent Manual, and Broker's Terms of Engagement have several provisions relevant to this Motion.  Specifically, the "Independent Contract Agreements" provide:

> This ICA creates an independent contractor relationship for all purposes including, but not limited to, federal, state, and local laws regarding income taxation, withholding tax regulations, unemployment insurance, and/or workers' compensation, and does

**DEFENDANTS COMPASS WASHINGTON, LLC AND COMPASS, INC.'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT**    -2-

TADJEDIN THOMAS & ENGBLOOM LAW GROUP LLP
1211 NW Glisan Street, Suite 203
Portland, Oregon 97209

not create an employer-employee, joint venture, or partnership relationship. Incentives are based on Agent's output, not hours worked.

(Declaration of Jay T. Ramsey ("Ramsey Decl.")), ¶ 4 Ex. A at 1; *id.* ¶ 5, Ex. B.) The "National Agent Manual" Provides:

### Do Not Call Registry/Do Not Contact

Agents are not permitted to call any person listed on the Federal Trade Commission's National Do Not Call Registry including any person with an expired listing or a person who is a "For Sale by Owner", unless you have had a business relationship with that person in the past 18 months or have written consent from them to call. Do Not Call restrictions do not apply to previous clients from the past 18 months, unless a client has requested not to be contacted by Agent or Compass. Agents who violate the National Do Not Call rules can be subject to significant fines. There are also state Do Not Call registries whose rules apply to real estate agents contacting those individuals by phone and which also have fines. You should not call or text anyone who is on your state Do Not Call registry or anyone who has requested not to be contacted by you or Compass, regardless of whether they are on the national or a state Do Not Call registry.

You should maintain, regularly update, and check the National, State and your own internal Do Not Call lists before reaching out to a prospect for the first time or an old client you haven't been in contact with for more than 18 months. The national Do Not Call Registry is updated every 31 days, so it is recommended that you check the updated list every month.

You can access the Do Not Call Registry online. As of January 2021, the first five area codes on the national registry are free to access, however this number is subject to change. Contact your Sales Manager if you are unsure whether your state has its own Do Not Call Registry or if you have any questions.

In addition, you should not contact (email, text, phone) anyone who has requested not to be contacted by you or Compass.

### Telephone Consumer Protection Act

Under the Telephone Consumer Protect Act (TCPA), Agents cannot make robocalls/texts or use autodialers to make a sales solicitation or pitch to an individual's residential phone line or cell phone unless the Agent has received express prior written consent from the person to make a robocall or robo-text or autodialer call. Written consent must specifically state that the individual agrees to receive robocalls/messages or autodialer calls from the Agent. Consent can be withdrawn at any time. For the purposes of this policy,

**DEFENDANTS COMPASS WASHINGTON, LLC AND COMPASS, INC.'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT**

-3-

TADJEDIN THOMAS & ENGBLOOM LAW GROUP LLP
1211 NW Glisan Street, Suite 203
Portland, Oregon 97209

autodialers are programs or other technology that can dial phone numbers without needing a person. Violation, even inadvertently, of the TCPA may arise in hefty fines. As of January 2021, fines are calculated per violation, which means each call or text message that is part of the robo or autodialer campaign that violates the TCPA may be included in the penalty calculation. Each violation can range from a fine of $500 to $1500.

Compass does not condone the use of autodialer calls or robocalls/text messages unless the recipient has provided written consent to the Agent. You should maintain a copy of the consent and any withdrawal of consent for your records. The TCPA also applies to any third parties engaged by an Agent, such as telemarketers, to make robocalls/texts or autodialer calls on your behalf. Agents can be liable for violation of the TCPA if telemarketers violate the TCPA while making calls or texts on the Agent's behalf.

The TCPA does not apply to autodialer calls or robo calls or text messages to businesses phone lines.

**Telemarketing Sales Rule**

The Telemarketing Sales Rule ("TSR") applies to telemarketing sales calls to an individual to persuade them to purchase goods or services. Real estate agents are considered telemarketers under this law. The TSR lays out rules and restrictions that telemarketers must follow when making a sales call.

The law requires that you transmit your phone number to the individual's caller ID if possible and tell them your name and on whose behalf you are calling.

(*Id.* ¶ 6, Ex. C at 7–8.)  The "Washington Agent Manual" Provides:

All digital and electronic marketing or solicitation (including, but not limited to, email and telephone) is regulated by federal and state laws as well as Washington State Department of Licensing (DOL) and the Northwest Multiple Listing service (NWMLS) and any other applicable MLS.  Agent/ Team must comply fully with all applicable laws and rules.

. . .

**Do Not Call Registry**

Agents are not permitted to call any person listed on the Federal Trade Commission's National Do Not Call Registry and any person with an expired listing (with whom an Agent has not had prior contact) who is on the National Do Not Call Registry. This rule does not apply to previous clients or to people for whom an Agent has written permission to contact. Agents who violate the National Do Not Call rules can be subject to significant fines.

(*Id.* ¶ 7, Ex. D at 10, 23.)

**DEFENDANTS COMPASS WASHINGTON, LLC AND COMPASS, INC.'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT**

-4-

TADJEDIN THOMAS & ENGBLOOM LAW GROUP LLP
1211 NW Glisan Street, Suite 203
Portland, Oregon 97209

The "Broker's Terms of Engagement" provide:

> *Compliance with Laws*.  Agent agrees to comply with all federal, state, and local laws, statutes, rules, and regulations (collectively, "Laws") applicable in the jurisdiction(s) where Agent performs the Services, including, but not limited to, "fair housing" laws, "do not call" laws, state and federal privacy laws, MLS and other listing service rules and regulations, and all laws pertaining to the Services.
>
> . . .
>
> **11. Independent Contractor Relationship.**  The ICA creates an independent contractor relationship between Agent and Broker. Agent is not an employee of Broker and will not represent themselves as such to any third party. As an independent contractor, Agent is not entitled to any benefits such as social security, unemployment, medical, or pension payments. Subject to applicable Laws, Broker will not restrict Agent's activities to a particular geographical area, or dictate Agent's day-to-day performance of the Services (e.g., schedule, hours, meetings, time off, etc.). Agent is responsible for filing all income tax returns, paying all required income and withholding taxes, and procuring any required general liability and workers' compensation insurance at Agent's sole cost, unless otherwise required by applicable Laws. As an independent contractor, Agent (a) will be paid a commission on sales, without deduction for taxes, based on sales or other output; (b) will not be entitled to a draw against commissions; and (c) will not receive any remuneration related to the number of hours worked. Subject to the ICA and these Terms, Agent is free to engage in outside employment and is permitted to work from any location, on any days and hours, and in any way Agent elects. Broker may offer Agent opportunities to attend trainings and meetings, such as product trainings, marketing forums, community events, and periodic sales meetings, but Agent's attendance is optional in all cases, unless otherwise required by applicable Laws.

(*Id.* ¶ 8, Ex. E at 1–2.)  As explained below, these provisions, combined with the lack of allegations in the FAC, foreclose any liability to Compass.

## III.    **LEGAL STANDARD**

A complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "Though motions to dismiss require the court to take factual allegations as true, the court is not bound to accept as true a legal conclusion couched as a factual allegation."  *Comfort v. Jackson Cnty.*, No. CV 09-3060-CL, 2010 WL 1278866, at *3 (D. Or. Mar. 31, 2010) (internal quotations omitted).  Similarly, "the court need not accept as true

**DEFENDANTS COMPASS WASHINGTON, LLC AND COMPASS, INC.'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT**    -5-

TADJEDIN THOMAS & ENGBLOOM LAW GROUP LLP
1211 NW Glisan Street, Suite 203
Portland, Oregon 97209

conclusory allegations that contradict documents referred to in the complaint or subject to judicial notice." *Harrington v. Airbnb, Inc.*, No. 3:17-CV-00558-YY, 2018 WL 3148245, at *1 (D. Or. Jan. 25, 2018). Importantly, "[a] claim only rises above the speculative level when the plaintiff pleads factual content that allows the court to draw the reasonable inference that *the defendant* is liable for the misconduct alleged." *Hernandez v. Blewett*, No. 2:20-CV-01996-AA, 2023 WL 4931292, at *2 (D. Or. Aug. 2, 2023) (internal quotations omitted) (emphasis added).

## IV.    <u>ARGUMENT</u>

### A.    <u>Compass Cannot Be Held Vicariously Liable For The Alleged Calls To Plaintiff</u>

"There are two potential theories of liability [for a TCPA violation]: (1) direct liability; and (2) vicarious liability." *Thomas v. Taco Bell Corp.*, 582 Fed. Appx. 678, 679 (9th Cir. 2014). "Direct liability is inapplicable here, as the parties do not dispute that the actual callers were various real estate agents, rather than Defendant." *Usanovic v. Americana, L.L.C.*, 775 F. Supp. 3d 1133, 1139 (D. Nev. 2025). Accordingly, Plaintiff must sufficiently allege that Compass is vicariously liable for the calls at issue. Plaintiff cannot make this showing.

#### 1.    *Plaintiff Fails to Establish the Existence of an Agency Relationship Between Compass and Its Real Estate Agents*

"[A] defendant may be held vicariously liable for TCPA violations where the plaintiff establishes an agency relationship, as defined by federal common law, between the defendant and a third-party caller." *Gomez v. Campbell-Ewald Co.*, 768 F.3d 871, 878 (9th Cir. 2014). No such agency relationship exists here. Pursuant to the express terms of the Independent Contractor Agreement governing the relationship between Compass and its real estate agents, the agreement "creates an *independent contractor* relationship for all purposes". (Ramsey Decl., ¶ 4, Ex. A at 1 (emphasis added); *id.* ¶ 5, Ex. B (same).) This same representation is made in the Broker's Terms of Engagement incorporated by reference therein. (*Id.* ¶ 8, Ex. E at 1 ("The ICA creates an independent contractor relationship between Agent and Broker.")) "[A]n agency relationship is not created where the agent is an 'independent contractor.' Although the right to control <u>the result</u> is inherent in both independent contractor relationships and principal-agency relationships; it is

the right to control the means and manner in which the result is achieved that is significant in determining whether a principal-agency relationship exists." *World Mix Ent., Ltd. v. Bone Thugs Harmony, Inc.*, No. CV 07-02159 DDP (EX), 2009 WL 10671949, at *3 (C.D. Cal. Mar. 3, 2009) (cleaned up); *accord Naiman v. TranzVia LLC*, No. 17-CV-4813-PJH, 2017 WL 5992123, at *12 (N.D. Cal. Dec. 4, 2017) (citing *United States v. Bonds*, 608 F.3d 495, 505–06 (9th Cir. 2010); *Jones v. Royal Admin. Servs., Inc.*, 866 F.3d 1100, 1105 (9th Cir. 2017)) ("Generally, an individual acting as an 'independent contractor,' rather than an agent, does not have the traditional agency relationship with the principal necessary for vicarious liability.").

Even setting aside the express terms of the Independent Contractor Agreements and Broker's Terms of Engagement, the FAC fails to plead any facts to support Plaintiff's conclusory allegation that Olson and Sanger have an agency relationship with Compass. "[T]he primary factor that distinguishes an employment relationship from an independent contractor position is the extent of the employer's right to control the means and manner of the worker's performance." *Poland v. United States Att'y Gen.*, No. CV1002878MMMPLAX, 2012 WL 13001837, at *5 (C.D. Cal. July 30, 2012). Independent contractors are contractually bound to perform a service, but, unlike an employee, they are "not controlled by the [principal] nor subject to the [principal]'s right to control with respect to [their] physical conduct in performing the services." Restatement (Second) of Agency § 2(3) (1958). In the TCPA context, for Plaintiff to establish an agency relationship between Compass and its real estate agents, "Plaintiff must [allege and] show that [Compass] controlled or had the right to control the real estate agents—specifically the manner and means *of the calls* conducted." *Usanovic*, 775 F. Supp. 3d at 1139 (emphasis added). On that score, Plaintiff makes no allegations that Compass controls how real estate agents place calls or to whom. Plaintiff does not—and cannot—allege, for example, that Compass "control[s] the hours the [real estate agents] work[] []or . . . set[s] quotas for the number of calls or sales the [real estate agents] ha[ve] to make," *Jones v. Royal Admin. Servs.*, 887 F.3d 443, 451 (9th Cir. 2018); *accord Usanovic*, 775 F. Supp. 3d at 1140 ("Defendant does not direct Plaintiff how many calls to make, nor do the calls occur under the Defendant's supervision."); that Compass "provides trainings to

agents concerning how to make calls, including where to purchase phone numbers and dialers," *Usanovic*, 775 F. Supp. 3d at 1140; or that any such trainings "are required" or that the real estate agents "must use the dialers and vendors that Defendant recommends." *Id.* In fact, the Broker's Terms of Engagement <u>expressly</u> provide that "Broker will not . . . dictate Agent's day-to-day performance of the Services (e.g., schedule, hours, meetings, time off, etc.)" and that "Agent's attendance [at trainings offered by Compass] is optional in all cases". (Ramsey Decl., ¶ 8, Ex. E at 2.) Because Plaintiff fails to allege that Compass controls the "manner and means of the calls conducted" by its real estate agents, there is no agency relationship between Compass and its real estate agents.

In an attempt to salvage her agency theory, Plaintiff alleges in the FAC that Compass "retained the right to direct and control the manner and means of Olson's and Sanger's marketing and solicitation" (FAC ¶ 60). But every example of "control" pleaded in the FAC is disconnected from the phone calls at issue. Instead, the FAC's examples merely describe Compass's right to oversee the real estate agents' "branding" and "marketing materials" and to approve any provided "marketing budget" (*See, e.g.*, FAC ¶ 60 ("Compass required that all marketing materials utilize 'Broker-branded signs, business cards, logos' and that any marketing expenses be 'subject to approval and reimbursement in Broker's sole and reasonable discretion.'"); *id.* ¶ 61–62 ("Indeed, Compass also provided a launch marketing budget to pay for marketing and advertising. However, Compass only allowed those marketing budgets to be used 'in accordance with Broker's policies and procedures,' and any agent-incurred marketing expenses were 'subject to approval and reimbursement in Broker's sole and reasonable discretion.'"); *id.* ¶ 63 ("Compass likewise mandated that all advertisements comply with all Compass marketing and branding policies and guidelines.")) Exercising basic brand-protection measures and quality control is fundamentally different from control over the day-to-day manner and means of an independent contractor's telephone calls to potential prospects.

Similarly, Plaintiff alleges in the FAC that Compass "also expressly regulated 'digital and electronic marketing or solicitation (including, but not limited to, email and telephone)'" by

**DEFENDANTS COMPASS WASHINGTON, LLC AND COMPASS, INC.'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT**

-8-

"requir[ing] agents to 'comply fully with all applicable laws and rules'". (*Id.* ¶ 64.)  But a general requirement by Compass that real estate agents follow the law is not the same thing as Compass controlling the "manner and means of the calls conducted."  *See Jones*, 887 F.3d at 451 (rejecting argument that "guidelines and procedures generally requir[ing] [telemarketers] to 'operate in accordance with laws and regulations'" constituted control over the "manner and means" of the telemarketers' calls).

Because Plaintiff has affirmatively alleged the existence of an independent contractor relationship between Olson, Sanger, and Compass; because the Independent Contractor Agreements confirm this status; and because Plaintiff has not, and cannot, allege facts demonstrating that Compass retained the right to control Olson and Sanger's calling, Plaintiff has not, and cannot, plead an agency relationship between Compass and its agents.  Plaintiff's FAC against Compass should therefore be dismissed.

### 2.     *Plaintiff Fails to Establish Any of the Three Agency Theories for Liability*

As a preliminary matter, "[i]t is the general rule that an employer or primary contractor is not liable for the torts of an independent contractor." *Fegles Const. Co. v. McLaughlin Const. Co.*, 205 F.2d 637, 640 (9th Cir. 1953); *accord M.J. ex rel. Beebe v. United States*, 721 F.3d 1079, 1085 (9th Cir. 2013) ("That general rule, which shields an employer from liability for the conduct of its independent contractors, cuts off the employer's vicarious liability for the contractor's torts."). This rule is based upon the theory—described above—that, in an independent contractor relationship, "the employer [*i.e.*, the principal] does not possess the power of controlling the person employed [*i.e.*, the independent contractor] as to the ***details*** of the stipulated work and therefore is not answerable for an injury resulting from ***the manner*** in which the work is carried out." *Fegles Const. Co.*, 205 F.2d at 640 (emphasis added).  Because Olson and Sanger are indisputably independent contractors of Compass, Compass cannot be held liable for their actions.

Even setting aside the above, Plaintiff also fails to allege facts sufficient to establish any of the three agency theories for TCPA liability: actual authority, apparent authority, and ratification.  *See Jones Servs.*, 887 F.3d at 453 n.3; *Abante Rooter & Plumbing, Inc. v. Alarm.com*

*Inc.*, Case No. 15-cv-06314-YGR, 2018 WL 3707283, at *3 (N.D. Cal. Aug. 3, 2018) ("A plaintiff can establish . . . vicarious liability under the TCPA, using the 'bedrock theories of agency,' actual authority, apparent authority, and ratification."). Each theory is discussed in turn below.

> **a.     There Are No Facts Showing Compass Real Estate Agents Had Actual Authority to Call Numbers on the NDNCR or IDNCL**

Plaintiff's FAC attempts to pursue a theory that Olson and Sanger acted with actual authority from Compass when they placed the telephone calls at issue, but this theory is unsupported by the facts pled and is directly foreclosed by the Independent Contractor Agreement, National and Washington Agent Manuals, and Broker's Terms of Engagement.

"An agent acts with actual authority when, at the time of taking action that has legal consequences for the principal, the agent reasonably believes, in accordance with the *principal's* manifestations <u>to the agent</u>, that the principal wishes the agent so to act." *Hartranft v. TVI, Inc.*, Case No. SACV 15-01081-CJC (DFMx), 2017 WL 11249764, at *2 (C.D. Cal. Mar. 9, 2017) (emphasis added). Actual authority is limited to actions "specifically mentioned to be done in a written or oral communication" or "consistent with" a principal's "general statement of what the agent is supposed to do." *Salyers v. Metro. Life Ins. Co.*, 871 F.3d 934, 940 (9th Cir. 2017). Plaintiff has failed to plead facts supporting a theory of actual authority for at least two reasons.

First, Plaintiff "provides no [Compass] authorization or directive to the real estate agents instructing them to make calls to numbers on the NDNCR" or IDNCL. *Usanovic*, 775 F. Supp. 3d at 1140; *see also Valdes v. Nationwide Real Est. Executives, Inc.*, No. SA-cv-2001734-DOCJDEX, 2021 WL 2134159, at *4 (C.D. Cal. Apr. 22, 2021) ("Plaintiff fails to proffer any evidence showing that [Defendant] directs its agents to make cold calls that violate the TCPA or that [Defendant] has any control over whom its agents call.").

Second, in fact—and to the contrary—the documents expressly incorporated into the FAC demonstrate that Compass expressly *prohibited* Olson and Sanger from making the allegedly offensive calls. The "National Agent Manual" distributed by Compass to its real estate agents explicitly provides that "[a]gents are not permitted to call any person listed on the Federal Trade

**DEFENDANTS COMPASS WASHINGTON, LLC AND COMPASS, INC.'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT**     -10-

TADJEDIN THOMAS & ENGBLOOM LAW GROUP LLP
1211 NW Glisan Street, Suite 203
Portland, Oregon 97209

Commission's National Do Not Call Registry including any person with an expired listing or a person who is a 'For Sale by Owner', unless you have had a business relationship with that person in the past 18 months or have written consent from them to call" (Ramsey Decl., ¶ 6, Ex. C at 7) and further provides "you should not contact (email, text, phone) anyone who has requested not to be contacted by you or Compass". (*Id.*)  The "Washington Agent Manual" provided to its real estate agents provides for the same. (Ramsey Decl., ¶ 7, Ex. D at 23 ("Agents are not permitted to call any person listed on the Federal Trade Commission's National Do Not Call Registry and any person with an expired listing (with whom an Agent has not had prior contact) who is on the National Do Not Call Registry."))  Moreover, the "Broker's Terms of Engagement," incorporated by reference into the Independent Contractor Agreements, provides "Agent agrees to comply with all federal, state, and local laws, statutes, rules, and regulations . . . including . . . 'do not call' laws". (Ramsey Decl., ¶ 8, Ex. E at 1; *see also id.* at 21.)  This alone precludes a finding of actual authority.  *See Jones v. Royal Admin. Servs., Inc.*, 866 F.3d 1100 (9th Cir. 2017) (noting defendant could not be liable based on theory of actual authority because its contract with the vendor prohibited the vendor from acting on behalf of defendant in any way that would violate the law).

> **b.     There Are No Facts Showing Compass Real Estate Agents Had Apparent Authority to Call Numbers on the NDNCR or IDNCL**

Plaintiff's FAC also attempts to pursue a theory that Olson and Sanger acted with apparent authority from Compass when they placed the telephone calls at issue.  Again, this is not supported by the facts pleaded.

"Apparent authority arises from the ***principal's*** manifestations <u>to a third party</u> that supplies a reasonable basis for that party to believe that the principal has authorized the alleged agent to do the act in question."  *NLRB v. Dist. Council of Iron Workers of Cal. Vicinity,* 124 F.3d 1094, 1099 (9th Cir. 1997).  Here, Plaintiff has failed to allege any statement from Compass upon which she relied to believe that Olson and Sanger acted with apparent authority.  In fact, she alleges no direct communication with Compass at all.  Plaintiff alleges she "has never been a customer of Compass" and "did not recognize Compass" (FAC ¶ 26, 48).  Instead, she alleges only that ***the agents*** "stated

that [they were] with Compass Real Estate". (FAC ¶ 35; *see also id.* ¶¶ 33–34.)  This is irrelevant, because "[a]pparent authority cannot be established merely by showing that [the agent] claimed authority or purported to exercise it, but must be established by proof of something said or done by the [principal] on which [the third party] reasonably relied." *NLRB,* 124 F.3d at 1099.  Courts have routinely applied this to find that real estate agents who violated the TCPA did not act with apparent authority—despite identifying themselves as calling on behalf of the real estate brokerage at the beginning of the call in question.  *See, e.g.*, *Usanovic*, 775 F. Supp. 3d at 1141 ("[Plaintiff] alleges that the agents identified themselves as calling from [Berkshire Hathaway HomeServices Nevada Properties], but this is insufficient to establish apparent authority."); *Rahimian v. Adriano*, No. 220-cv-02189-GMN-VCF, 2022 WL 798371, at *5 (D. Nev. Mar. 16, 2022) ("Plaintiff claims that Defendant Adriano identified herself as calling 'from Century 21 Americana.' . . . Plaintiff fails to plead sufficient facts demonstrating reasonable reliance.").

> c.    **There Are No Facts Showing Compass Ratified the Calling of Numbers on the NDNCR or IDNCL**

Plaintiff's FAC also attempts to pursue a theory that Olson's and Sanger's calls to Plaintiff were ratified by Compass.  Once again, this theory is not supported by the facts pled.

Ratification is "the affirmance of a prior act done by another, whereby the act is given effect as if done by an agent acting with actual authority." *Kristensen v. Credit Payment Servs., Inc.*, 879 F.3d 1010, 1014 (9th Cir. 2018).  "Even if a principal ratifies an agent's act, '[t]he principal is not bound by a ratification made without knowledge of material facts about the agent's act unless the principal chose to ratify with awareness that such knowledge was lacking.'" *Kristensen*, 879 F.3d at 1014 (alteration in original) (quoting Restatement (Third) of Agency § 4.01 cmt. b).  "A principal has assumed the risk of lack of knowledge if 'the principal is shown to have had knowledge of facts that would have led a reasonable person to investigate further, but the principal ratified without further investigation.'" *Id.* (quoting Restatement (Third) of Agency § 4.06 cmt. d).  Plaintiff has failed to plead facts supporting a theory of ratification for at least two reasons.

First, as already discussed in section IV.A.1 *supra*, the FAC does not sufficiently allege an "agency" relationship between Compass and any real estate agent who allegedly called Plaintiff. "Ratification does not apply if the actor is not an agent and does not purport to be one." *Salaiz v. eHealthInsurance Servs., Inc.*, No. 22-CV-04835-BLF, 2023 WL 2622138, at *4 (N.D. Cal. Mar. 22, 2023); *accord Thomas*, 582 Fed. Appx. at 680 ("Although a principal is liable when it ratifies an originally unauthorized tort, the principal-agent relationship is still a requisite, and ratification can have no meaning without it."); *Pascal v. Agentra, LLC*, No. 19-CV-02418-DMR, 2019 WL 5212961, at *4 (N.D. Cal. Oct. 16, 2019) (dismissing TCPA claim based on ratification theory because "the FAC fails to sufficiently allege an agency relationship" between the caller and the alleged principal).

Second, even if an "agency" relationship was pled, the FAC is also completely devoid of any facts which, if proven true, would establish ratification by Compass.  Plaintiff alleges that "Compass ratified Olson's and Sanger's conduct by learning of the calls to Plaintiff, investigating the circumstances, and taking no corrective action" (FAC ¶ 70)—specifically "not terminat[ing] them when they were informed of Olson and Sanger's illegal calling conduct." (*Id.* ¶ 83; *see also id.* ¶¶ 79–80.)  This fails for at least two reasons.  First, as alluded to in the introduction, Plaintiff's claims are a farce—she's a serial TCPA litigant who manufactures claims and, in this instance, went so far as to impersonate someone.  Second, as Plaintiff concedes in the FAC, the only representation that Compass has made regarding any disciplinary actions taken against the agents who called her number is that, "***[p]rior to the filing of the Complaint***, Rachel Olson and Ansel Sanger have not been reprimanded, disciplined, or otherwise warned concerning their outbound calling or texting practices." (*Id.* ¶ 70 (emphasis added).)  But there is no allegation that Compass knew, prior to the initiation of this lawsuit, that Rachel Olson or Ansel Sanger were making calls to numbers on the NDNCR or IDNCL.  Accordingly, Plaintiff fails to show that Compass knew about and "ratified" the conduct of the two agents.  *See Kristensen*, 879 F.3d at 1012 (finding there was "no evidence that [marketing company] had actual knowledge that [vendor] was sending text

**DEFENDANTS COMPASS WASHINGTON, LLC AND COMPASS, INC.'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT**    -13-

TADJEDIN THOMAS & ENGBLOOM LAW GROUP LLP
1211 NW Glisan Street, Suite 203
Portland, Oregon 97209

messages in violation of TCPA" and therefore concluding that "[marketing company] cannot be deemed to have ratified [vendor]'s actions and therefore is not vicariously liable.").

## B. The TCPA's Caller ID Rules Do Not Confer A Private Right Of Action

Courts in this District and elsewhere have overwhelmingly found that 47 C.F.R. § 64.1601(e) does not confer a private right of action. *See Griffin v. American-Amicable Life Ins. Co. of Tex.*, 2024 WL 4333373, at *5 (D. Or. Sept. 27, 2024); *see also Meyer v. Cap. All. Grp.*, No. 15-CV-2405-WVG, 2017 WL 5138316, at *17 (S.D. Cal. Nov. 6, 2017); *Worsham v. Travel Options, Inc.*, No. JKB-14-2749, 2016 WL 4592373, at *4 (D. Md. Sept. 2, 2016), *aff'd,* 678 F. App'x 165 (4th Cir. 2017); *Dobronski v. Fam. First Life, LLC*, No. 22-cv12039, 2024 WL 575858, at *18–19 (E.D. Mich. Jan. 19, 2024)*, report and recommendation adopted in part, rejected in part,* No. 22-cv-12039, 2024 WL 1342668 (E.D. Mich. Mar. 29, 2024); *Dobronski v. Tobias & Assocs.*, No. 23-cv-10331, 2023 WL 7005844, at *7–8 (E.D. Mich. Sept. 25, 2023)*, report and recommendation adopted in part sub nom. Dobronski v. Tobias & Assocs., Inc.,* No. 23-10331, 2024 WL 1174553 (E.D. Mich. Mar. 18, 2024); *Dobronski v. Total Ins. Brokers, LLC*, No. 21-10035, 2021 WL 4452218, at *2–3 (E.D. Mich. Sept. 29, 2021); *Dobronski v. SunPath Ltd.*, No. 19-13094, 2020 WL 8840311, at *6–7 (E.D. Mich. July 27, 2020)); *Dobronski v. Selectquote Ins. Servs.*, 462 F. Supp. 3d 784, 789–90 (E.D. Mich. 2020). The overwhelming authority demonstrates that no cause of action exists for violations of § 64.1601(e) because the regulation itself does not expressly convey a private right of action. *See, e.g.*, *Meyer*, 2017 WL 5138316, at *16–17 ("[I]t is highly improbable that . . . the FCC . . . absent mindedly forgot to mention an intended private action." (cleaned up)); *Worsham*, 2016 WL 4592373, at *4 ("[T]he FCC's rule in § 64.1601(e) appears to *support* consumers' enforcement efforts under the TCPA's subsection c, rather than to *create* a separate mechanism upon which a consumer can make an actionable claim." (emphases in original)).

Although Plaintiff cites in the FAC to *Dobronski v. Selectquote Ins. Servs.*, 773 F. Supp. 3d 373 (E.D. Mich. 2025), to argue that § 64.1601(e) does confer a private right of action, even the *Selectquote* court explicitly acknowledged that its finding was contrary to "[t]he [m]ajority

[a]pproach," noting that "[a]part from one state court opinion, every case presented by the parties has concluded that § 64.1601(e) lacks a private right of action." *Id.* at 377.  Similarly, while a recent District of Oregon decision found a private right of action under § 64.1601(e), Judge Michael H. Simon readily admitted that courts are split on the issue. *See Weingrad v. DaBella Exteriors, LLC*, No. 3:25-CV-396-SI, 2026 WL 496609, at *3 (D. Or. Feb. 23, 2026).  Judge Simon acknowledged not only that "[t]he Ninth Circuit has not yet resolved this issue," but also that "[s]ome federal courts, including a decision in the District of Oregon by U.S. District Judge McShane, have reached th[e] conclusion [that § 64.1601(e) does not confer a private right of action]." *Id.*  At best, Plaintiff relies on a fractured district-level split that runs ***against*** the broader weight of authority.  Because Plaintiff may not pursue a private right of action under 47 U.S.C. § 227(c)(5) for alleged violations of 47 C.F.R. § 64.1601(e), Plaintiff's claim should be dismissed with prejudice.[2]

---

[2] In addition to lacking a private right of action to pursue her claim for violation of 47 C.F.R. § 64.1601(e), Plaintiff appears to plead herself out of any claim ***against Compass*** for the same.  As set forth in Section IV.A *supra*, Plaintiff must necessarily pursue any claims against Compass for violation of the TCPA under a theory of vicarious liability.  As the table included in Paragraph 43 of the FAC—and as Plaintiff's allegations in Paragraph 44—make clear, both Twilio and AT&T "provided accurate CNAM functionality" for Olson and Sanger. (FAC ¶ 44.)  Only the CNAM functionality for 425-464-7241 and 425-296-9832 (the telephone numbers attributed to the otherwise unidentified "Leah" and "Anella" in Paragraphs 33 and 34 of the FAC) "transmitted a geographic location, and not the Defendants' name or telemarketer's name." (FAC ¶ 44.)  However, after a diligent search and reasonable inquiry, Compass has been unable to identify any real estate agents by those names that contacted Plaintiff (and, indeed, has no record of anyone by the name of "Anella" working for Compass at all).

## V.    CONCLUSION

For these reasons, the Court should dismiss the FAC as to Compass with prejudice.

Dated: March 20, 2026

**TADJEDIN THOMAS & ENGBLOOM LAW GROUP LLP**

By:    */s/ Julie Engbloom*
    JULIE ENGBLOOM, OR Bar No. 066988
    juliee@ttelawgroup.com
    1211 NW Glisan Street, Suite 203
    Portland, Oregon 97209
    Telephone: 503-546-0675

    SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
    JAY T. RAMSEY, *admitted pro hac vice*
    jramsey@sheppardmullin.com
    1901 Avenue of the Stars
    Suite 1600
    Los Angeles, California 90067
    Telephone: 310-228-3700
    Facsimile: 310-228-3701

    *Attorneys for Defendants*
    COMPASS WASHINGTON, LLC;
    COMPASS, INC.

## CERTIFICATE OF COMPLIANCE

This brief complies with the applicable word-count limitation under LR 7-2(b) because it contains 5,833 words, including headings, footnotes, and quotations, but excluding the caption, table of contents, table of cases and authorities, signature block, exhibits, and any certificates of counsel.

*/s/ Julie Engbloom*
Julie Engbloom

**DEFENDANTS COMPASS WASHINGTON, LLC AND COMPASS, INC.'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT**    -17-

TADJEDIN THOMAS & ENGBLOOM LAW GROUP LLP
1211 NW Glisan Street, Suite 203
Portland, Oregon 97209

## CERTIFICATE OF SERVICE

I, Julie Engbloom, hereby certify that on this 20th day of March, 2026, a copy of the foregoing **DEFENDANTS COMPASS WASHINGTON, LLC AND COMPASS, INC.'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT** was served via the ECF system, on all counsel of record.


/s/ Julie Engbloom
Julie Engbloom