Andrew Roman Perrong, OSB No. 243320
a@perronglaw.com
Perrong Law LLC
2657 Mount Carmel Avenue
Glenside, PA 19038
215-225-5529
Attorney for Plaintiff and the Proposed Class

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON
PORTLAND DIVISION**

| | |
|---|---|
| **JESSICA MURCH,** individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>**Compass Washington, LLC,<br>Compass, Inc.,<br>Rachel Olson, and<br>Ansel Sanger**<br><br>*Defendants.* | Case No.<br><br>3:25-cv-1039<br><br>BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS<br>TCPA (47 U.S.C. § 227)<br>DEMAND FOR JURY TRIAL |

<u>**BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**</u>

Oppn. Motion to Dismiss                    i

## TABLE OF CONTENTS

Introduction..................................................................................................................... 1

Facts .................................................................................................................................. 2

Legal Standard ................................................................................................................. 4

Argument .......................................................................................................................... 5

A.    Compass Waived Its Rule 12(b)(6) Challenge by Answering the Original Complaint; Its Post-Answer Motion to Dismiss Is Untimely........................................................ 5

B.    Plaintiff Adequately Pleads Compass's Vicarious Liability for Olson's and Sanger's Calls. .............................................................................................................................. 6

    1. The "Independent Contractor" Label Is Not Dispositive, and Agency Is a Fact-Intensive Question Unsuited to Resolution on a Motion to Dismiss.......................................... 7
    2. Olson and Sanger Acted with Compass's Actual Authority................................... 10
    3. Olson and Sanger Acted with Compass's Apparent Authority. ............................... 15
    4. Compass Ratified Olson's and Sanger's Conduct. ................................................. 18

C.    Independently, Compass Is Liable Under 47 U.S.C. § 227(c)(5)'s Statutory "On Behalf Of" Seller-Liability Test, Without Regard to Classical Agency. ............................. 22

D.    Plaintiff's Internal Do-Not-Call Claim Under 47 C.F.R. § 64.1200(d) States a Claim Against Compass Directly, Independent of Classical Agency. ........................................... 25

E.    47 C.F.R. § 64.1601(e) Is Enforceable Through the Private Right of Action in 47 U.S.C. § 227(c)(5). .................................................................................................................... 26

Conclusion ...................................................................................................................... 32

## TABLE OF AUTHORITIES

**Cases**

*Alexander v. Sandoval*, 532 U.S. 275 (2001)..................................................................27

*Aranda v. Caribbean Cruise Line, Inc.*, 179 F. Supp. 3d 817 (N.D. Ill. 2016) ............................20

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .............................................................................4

*Banks v. Pro Custom Solar*, 416 F. Supp. 3d 171 (E.D.N.Y. 2018)...................................15, 16, 18

*Barton v. Am. Fam. Life Assurance Co. of Columbus*, No. 3:25-CV-05671-TMC, 2026 WL 25742 (W.D. Wash. Jan. 5, 2026)........................................................................................28

*Barton v. Bright Solar Mktg. LLC*, No. 3:25-CV-05310-DGE, 2025 WL 2880136 (W.D. Wash. Oct. 9, 2025) ...............................................................................................................28

*Bilek v. Fed. Ins. Co.*, 8 F.4th 581 (7th Cir. 2021)....................................................................4, 7

*Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204 (1988) .........................................................27

*Brooks v. Caswell*, No. 3:14-CV-01232-AC, 2016 WL 866303 (D. Or. Mar. 2, 2016)..............5, 6

*Carr v. Humana Inc.*, No. 3:25-cv-00476-DJH, ECF No. 28 (W.D. Ky. Mar. 23, 2026).............28

*Castle Cheese, Inc. v. MS Produce, Inc.*, No. CIV.A 04-878, 2008 WL 4372856 (W.D. Pa. Sept. 19, 2008) ...................................................................................................................8

*Container Recovery, Inc. v. Shasta Nw., Inc.*, No. CIV. 05-1749-PK, 2007 WL 1724937 (D. Or. June 11, 2007)...................................................................................................21

*Dobronski v. CHW Grp., Inc.*, 2025 WL 2426370 ........................................................................28

*Dobronski v. Daraujo*, No. CV 25-10169, 2025 WL 3908484 (E.D. Mich. Dec. 1, 2025), report and recommendation adopted, No. 25-10169, 2025 WL 3708891 (E.D. Mich. Dec. 22, 2025) ...............................................................................................................................28

*Dobronski v. Juliasangel Mktg., LLC*, No. 2:24-CV-12379-TGB-APP, 2025 WL 2659265 (E.D. Mich. Sept. 17, 2025)...................................................................................................28

*Dobronski v. SelectQuote Ins. Servs.*, 773 F. Supp. 3d 373 (E.D. Mich. 2025) ....27, 28, 29, 30, 31

*Dobronski v. Uppleger*, No. 25-10168, 2026 WL 905121 (E.D. Mich. Mar. 31, 2026) ...............28

*Dolemba v. Ill. Farmers Ins. Co.*, 213 F. Supp. 3d 988 (N.D. Ill. 2016)....................................4, 9

*Elvig v. Calvin Presbyterian Church*, 375 F.3d 951 (9th Cir. 2004)................................................5

*Emtel, Inc. v. Lipidlabs, Inc.*, 583 F. Supp. 2d 811 (S.D. Tex. 2008)..............................................8

*Ewing v. Freedom Forever LLC*, No. 20-cv-880-JLS (AHG), 2021 WL 1087100 (S.D. Cal. Mar. 19, 2021) ...............................................................................................................10

*Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246 (9th Cir. 1997) .........................................................4

*Griffin v. Am.-Amicable Life Ins. Co. of Tex.*, No. 6:24-CV-00243-MC, 2024 WL 4333373 (D. Or. Sept. 27, 2024)........................................................................1, 26, 27, 30, 31

*Guadian v. DebtBlue LLC*, No. EP-23-CV-329-KC, 2024 WL 5184488 (W.D. Tex. Apr. 16, 2024) ................................................................................................................................9

*Harris v. Itzhaki*, 183 F.3d 1043 (9th Cir. 1999) ...........................................................................9

*Hayhurst v. Keller Williams Realty, Inc.*, No. 1:19CV657, 2020 WL 4208046 (M.D.N.C. July 22, 2020) .............................................................................................10, 12, 15, 17, 18

*Henderson v. United Student Aid Funds, Inc.*, 918 F.3d 1068 (9th Cir. 2019)..............7, 18, 20, 21

*In re DISH Network, LLC*, 28 FCC Rcd. 6574 (2013) ...............................4, 13, 15, 16, 17, 19, 24

*In re United Home Loans, Inc.*, 876 F.2d 897 (9th Cir. 1989) .......................................................4

*John v. Keller Williams Realty, Inc.*, No. 6:19-cv-1347-Orl-40DCI, 2020 WL 10502631 (M.D. Fla. Feb. 4, 2020) .................................................................................................10, 11

*Jones v. Royal Admin. Servs., Inc.*, 887 F.3d 443 (9th Cir. 2018) ...........................................12, 14

*Katz v. Allied First Bank, SB*, No. 22 C 5277, 2026 WL 636723 (N.D. Ill. Mar. 6, 2026) 2, 20, 22, 23, 24

*Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988 (9th Cir. 2018) .............................................8

*Klassen v. Solid Quote LLC*, 702 F. Supp. 3d 1052 (D. Colo. 2023) ..........................................4, 9

*Mauer v. Am. Intercontinental Univ., Inc.*, No. 16 C 1473, 2016 WL 4651395 (N.D. Ill. Sept. 7, 2016) ......................................................................................................................4, 9

*McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*, 606 U.S. 146 (2025) .............1, 23, 24

*Moore v. Club Exploria, LLC*, No. 1:19-CV-02504, 2025 WL 2755076 (N.D. Ill. Sept. 26, 2025) ...................................................................................................................14, 15, 25

*Moriarty v. Glueckert Funeral Home, Ltd.*, 155 F.3d 859 (7th Cir. 1998) ...................................14

*Newell v. JR Cap., LLC*, 791 F. Supp. 3d 571 (E.D. Pa. 2025) ..............................................28, 31

*NLRB v. Dist. Council of Iron Workers*, 124 F.3d 1094 (9th Cir. 1997) ......................................15

*Novia v. Mobiz, Inc.*, No. 25-CV-11036-AK, 2026 WL 752181 (D. Mass. Mar. 17, 2026) .........28

*Novia v. Mobiz, Inc.*, No. 25-CV-11036-AK, 2026 WL 770036 (D. Mass. Mar. 18, 2026) .........28

*Ochoa v. J.B. Martin & Sons Farms, Inc.*, 287 F.3d 1182 (9th Cir. 2002) ....................................7

*Plata v. Long Beach Mortg. Co.*, No. C 05-02746 JF, 2005 WL 3417375 (N.D. Cal. Dec. 13, 2005) .........................................................................................................................9

*Radvansky v. Kendo Holdings, Inc.*, 744 F. Supp. 3d 1314 (N.D. Ga. 2024) ...............................30

*Rahimian v. Adriano*, No. 2:20-cv-02189-GMN-VCF, 2022 WL 798371 (D. Nev. Mar. 16, 2022) ......................................................................................................................................18

*Slayman v. FedEx Ground Package Sys., Inc.*, 765 F.3d 1033 (9th Cir. 2014) ..............................7

*Sphere Drake Ins. Ltd. v. Am. Gen. Life Ins. Co.*, 376 F.3d 664 (7th Cir. 2004) ..........................18

*United States v. Dish Network L.L.C.*, 954 F.3d 970 (7th Cir. 2020) ...........................................13

*United States v. Dish Network LLC*, 256 F. Supp. 3d 810 (C.D. Ill. 2017) ..................................11

*Usanovic v. Americana, L.L.C.*, 775 F. Supp. 3d 1133 (D. Nev. 2025) .................................12, 17

*Usanovic v. EXP Realty, LLC*, No. C23-0687JLR, 2026 WL 864633 (W.D. Wash. Mar. 30, 2026) ......................................................................................................................................12

Oppn. Motion to Dismiss                                    iv

*Weingrad v. DaBella Exteriors, LLC*, No. 3:25-CV-396-SI, 2026 WL 496609 (D. Or. Feb. 23, 2026) ..................................................................................................26, 27, 28, 29, 30, 31

*Williams v. PillPack LLC*, 644 F. Supp. 3d 845 (W.D. Wash. 2022).......................................7, 15

## Statutes

15 U.S.C. § 6153................................................................................................................29

47 U.S.C. § 227(b) ...............................................................................................22, 24, 25, 29

47 U.S.C. § 227(b)(2) ..........................................................................................................28

47 U.S.C. § 227(c) ..................................................2, 23, 24, 25, 26, 27, 28, 29, 30, 31

47 U.S.C. § 227(c)(5)...........................................1, 2, 22, 24, 25, 26, 27, 30, 31

47 U.S.C. § 227(d)(1)–(3) ....................................................................................................29

47 U.S.C. § 227(e)(3) ...........................................................................................................29

47 U.S.C. § 227(i) ................................................................................................................29

## Rules

Fed. R. Civ. P. 8(a) ...............................................................................................................4

Fed. R. Civ. P. 12(b) .............................................................................................................5

Fed. R. Civ. P. 12(b)(6)..............................................................................................4, 5, 6, 8, 12

Fed. R. Civ. P. 12(c) .............................................................................................................6

## Regulations

47 C.F.R. § 64.1200(c)..........................................................................................................30

47 C.F.R. § 64.1200(d) ...................................................................................................25, 26

47 C.F.R. § 64.1200(d)(1).....................................................................................................25

47 C.F.R. § 64.1200(d)(2).....................................................................................................25

47 C.F.R. § 64.1200(d)(3).....................................................................................................25

47 C.F.R. § 64.1200(d)(4).....................................................................................................25

47 C.F.R. § 64.1601(e)...............................................................................................1, 26, 27, 28, 31

## Other Authorities

*In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 10 FCC Rcd. 12391 (1995)................................................................................................23

Oppn. Motion to Dismiss                              v

*In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18
  FCC Rcd. 14014 (2003)............................................................................................29, 30

Restatement (Third) of Agency § 1.01 cmt. f (Am. L. Inst. 2006)................................................13

Restatement (Third) of Agency § 2.01 (Am. L. Inst. 2006) ........................................................10

Restatement (Third) of Agency § 2.03 (Am. L. Inst. 2006) ........................................................15

Restatement (Third) of Agency § 4.01 (Am. L. Inst. 2006) ........................................................18

Restatement (Third) of Agency § 4.01 cmt. f (Am. L. Inst. 2006)................................................18

Restatement (Third) of Agency § 4.06 cmt. d (Am. L. Inst. 2006) .......................................18, 21

Restatement (Third) of Agency § 5.03 (Am. L. Inst. 2006) ........................................................21

Restatement (Third) of Agency § 7.07(2) (Am. L. Inst. 2006).....................................................14

5C Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1388 (3d ed. 2019)
  ........................................................................................................................................5

**Introduction**

Defendants Compass Washington, LLC and Compass, Inc.'s (collectively, "Compass") Motion to Dismiss should be denied. As a threshold matter, Compass already answered the original Complaint in this case, thereby waiving its Rule 12(b)(6) challenge. The First Amended Complaint ("FAC") did not add any vicarious liability allegations on facts and theories not deducible in the original Complaint. It merely added two Compass agents, Rachel Olson and Ansel Sanger, who have all along been identified as the callers, and incorporated the very contract documents that Compass produced in discovery. This sort of amended complaint does not revive the right to file a post-answer motion to dismiss where the amendments merely flesh out pre-existing claims. Compass's Motion, insofar as it pertains to allegations of vicarious liability, is procedurally untimely for that reason alone.

Even reaching the merits, Compass's Motion fails. Compass rests its entire vicarious liability challenge on the "independent contractor" label that it drafted into its own Independent Contractor Agreements. But the label is not dispositive of agency, and the Ninth Circuit and the FCC have both repeatedly rejected the notion that classifying a telemarketer as an "independent contractor" in a contract defeats vicarious liability under the Telephone Consumer Protection Act. Agency is a notoriously fact-bound question not susceptible to resolution on the pleadings. And whether pled under actual authority, apparent authority, or ratification, Plaintiff has more than adequately alleged facts giving rise to the inference of agency at this stage.

Plaintiff's allegations are also independently sufficient under 47 U.S.C. § 227(c)(5)'s statutory "on behalf of" test for seller liability, a test that, after *McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*, 606 U.S. 146 (2025), is no broader or narrower than Congress wrote it, and which on its face extends to the precise situation here, in which a seller's (Compass') real

Oppn. Motion to Dismiss                    1

estate services were being promoted by the callers (Olson and Sanger) to generate sales Compass would directly profit from. As Judge Gettleman recently held in *Katz v. Allied First Bank, SB*, "§ 227(c)(5) includes language that explicitly extends vicarious liability to violations under that subsection" through its "by or on behalf of" text. No. 22 C 5277, 2026 WL 636723, at *7 (N.D. Ill. Mar. 6, 2026).

Finally, the argument that 47 C.F.R. § 64.1601(e) does not support a private right of action under § 227(c)(5) has now been squarely rejected by Judge Simon of this Court in February. Compass's reliance on *Griffin* ignores that, since *Griffin* issued, every court to have considered the issue in any depth, including this one, has concluded that the reasoning in *Griffin* was wrong and that *Griffin* was wrongly decided.

Compass's Motion should be denied in its entirety.

**Facts**

Plaintiff Jessica Murch[1] is a residential subscriber whose telephone number has been on the National Do Not Call Registry for more than 31 days prior to the calls at issue. She never consented to be contacted by Compass. Beginning on August 14, 2024, Plaintiff received at least four calls from Compass agent Rachel Olson, who identified herself as a "Realtor," asked Plaintiff if she was looking to sell her house, and offered to help Plaintiff relocate. Plaintiff told

---

[1] Compass also litters its Motion with inflammatory, unproven, and irrelevant assertions about Ms. Murch's prior litigation history and unrelated conduct. Compass's Footnote 1 characterizes Ms. Murch as a "serial-TCPA litigant" who somehow allegedly "manufactured the instant lawsuit," despite making a written do not call request to Compass, and cites a single, factually dissimilar case, *GPS Capital Markets*, to falsely malign Plaintiff. Notwithstanding the dubious nature of these characterizations, GPS Capital Markets involved an isolated misdialed call without a do not call request, not the months-long, multi-agent, multi-channel solicitation campaign about a single property alleged here, these are factual issues the Court need not, and cannot, address at this stage. Compass's effort to import findings from an unrelated case to poison the well has no bearing on whether the FAC states a claim, and Plaintiff's well-pleaded allegations must be accepted as true on this Motion.

Oppn. Motion to Dismiss                     2

Olson not to call her. Olson ignored that request, sending Plaintiff at least five text messages offering to list Plaintiff's purported home, culminating in Plaintiff's written company-specific do not call request on August 29, 2024: "Compass, do not call us or e-mail again, I am sorry."

Compass ignored Plaintiff's company-specific do not call request. On September 11, 2024, Plaintiff received another call from "Leah," who "stated that she was with 'Compass Realty' and was calling about listing the same property that Ms. Olson had indicated she was interested in listing for Plaintiff." Plaintiff reiterated her company-specific do not call request. On May 13, 2025, Plaintiff received yet another call, this time from "Anella," advertising Compass' services. And, on June 5, 2025, Plaintiff received two final calls from Compass agent Ansel Sanger, who "stated that he was with Compass Real Estate and was looking to help the Plaintiff sell the same house that Ms. Olson had indicated she was interested in listing for Plaintiff." Each of these callers purported to be affiliated with and acting for Compass. The calls all used Compass's name and promoted Compass's real estate brokerage services.

The CNAM (caller name) information transmitted by the Compass callers' carriers also violated the TCPA's caller ID rule. For two of the numbers used, rather than transmitting the caller's or telemarketer's name, the callers' carriers transmitted a geographic location, "FALL CITY WA" and "KIRKLAND WA." The numbers used also could not be called back during regular business hours to lodge a do not call request, because the Plaintiff attempted to do so and was apparently ignored.

Compass has moved to dismiss on the basis that it is allegedly not vicariously liable for the conduct of Olson and Sanger. This response follows.

Oppn. Motion to Dismiss                      3

**Legal Standard**

To survive a motion to dismiss under Rule 12(b)(6), a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). The complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). The Court must "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). "The Rule 8 standard contains a powerful presumption against rejecting pleadings for failure to state a claim." *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997) (cleaned up).

A motion to dismiss is not an opportunity to litigate contested factual issues or to resolve competing inferences in the defendant's favor. That is especially true as to agency, which is a notoriously fact-bound question. *Bilek v. Fed. Ins. Co.*, 8 F.4th 581, 588 (7th Cir. 2021) ("[W]hether an agency relationship exists is ultimately a question of fact."); *In re United Home Loans, Inc.*, 876 F.2d 897 (9th Cir. 1989). At the pleading stage, the plaintiff must only "allege a factual basis that gives rise to an inference of an agency relationship through the use of generalized as opposed to evidentiary facts." *Klassen v. Solid Quote LLC*, 702 F. Supp. 3d 1052, 1059 (D. Colo. 2023) (citing *Mauer v. Am. Intercontinental Univ., Inc.*, No. 16 C 1473, 2016 WL 4651395, at * 2 (N.D. Ill. Sept. 7, 2016)). The plaintiff "is not required to plead all of its evidence in the complaint in order to plausibly allege agency." *Dolemba v. Illinois Farmers Ins. Co.*, 213 F. Supp. 3d 988, 996 (N.D. Ill. 2016) (citing *In re DISH Network, LLC*, 28 FCC Rcd. 6574 (2013)).

Oppn. Motion to Dismiss                         4

**Argument**

**A. Compass Waived Its Rule 12(b)(6) Challenge by Answering the Original Complaint; Its Post-Answer Motion to Dismiss Is Untimely.**

Before reaching the merits, the Motion fails at the threshold. Rule 12(b) requires that a motion to dismiss "be made before pleading if a responsive pleading is allowed." Fed. R. Civ. P. 12(b). The Ninth Circuit "regards post-answer 12(b) motions to dismiss as untimely." *Brooks v. Caswell*, No. 3:14-CV-01232-AC, 2016 WL 866303, at *2 (D. Or. Mar. 2, 2016) (citing *Elvig v. Calvin Presbyterian Church*, 375 F.3d 951, 954 (9th Cir. 2004)).

In *Brooks*, this Court squarely held that "an amended complaint does not revive the right to file a post-answer motion to dismiss, with the exception that new claims may be attacked." 2016 WL 866303, at *3. Allegations added to "bolster" or "flesh out" pre-existing claims, even if new and specific, do not create a new basis on which to assert a 12(b)(6) defense by post-answer motion. *Id.* As this Court put it, "Allowing a post-answer motion to dismiss on an amended complaint where the amendment merely substantiates existing claims would render the Rule 12(b) restriction on post-answer motions meaningless." *Id.* That rule is the broad consensus among the federal circuits and treatises. 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1388 (3d ed. 2019) ("The filing of an amended complaint will not revive the right to present by motion defenses that were available but were not asserted in a timely fashion prior to the amendment of the pleading.").

The *Brooks* rule is dispositive here. Compass's Motion raises two challenges to the FAC, first, Plaintiff has not adequately pleaded vicarious liability under any of the three agency theories, and second, that § 64.1601(e) does not confer a private right of action. The original Complaint referenced both Olson and Sanger and their involvement. Although the FAC adds in these individuals as Defendants, the nature and scope of their involvement was pled in the FAC

just as in the original Complaint. Compass could just as easily have moved to dismiss the agency allegations here but did not and has waived them. Plaintiff, however, concedes that Compass may still respond to the Caller ID claims.

The very contract documents on which Compass now relies, the ICAs, the ToE, and the Agent Manuals, were in Compass's own possession at the time it answered the original Complaint and were produced in discovery. Compass had no excuse for failing to bring the instant Motion as it pertains to vicarious liability against the original Complaint. The FAC changed nothing that could plausibly revive Compass's waiver on the first basis for which it moves to dismiss. Plaintiff added Olson and Sanger as individual defendants, but Compass's vicarious liability defenses are directed at Compass, not at Olson and Sanger. Plaintiff added specific factual allegations citing the ICA, ToE, and Agent Manuals, but these are pled "to bolster" Plaintiff's previously asserted theory, *Brooks*, 2016 WL 866303, at *3, not to assert a new one. No new claim implicating vicarious liability was asserted. Compass's Motion is exactly the type of post-answer Rule 12(b)(6) challenge *Brooks* forbids.

Compass's Motion should therefore be denied as untimely. At most, Compass should be permitted to file a motion for judgment on the pleadings, which this Court may convert under Rule 12(c), but only after pleadings are closed, which they are not yet given that this case has multiple newly added defendants who have yet to answer. Regardless of whether the Court denies the Motion outright as untimely or converts it, Compass is not entitled to the relief it seeks, for the substantive reasons set forth below.

### B. Plaintiff Adequately Pleads Compass's Vicarious Liability for Olson's and Sanger's Calls.

Even if Compass had not waived its challenge, the FAC more than adequately pleads Compass's vicarious liability for Olson and Sanger's unlawful calls. Under the TCPA, a seller

Oppn. Motion to Dismiss                          6

like Compass is "vicariously liable for the TCPA violations of third-party callers 'where the plaintiff establishes an agency relationship, as defined by federal common law, between the defendant and the third-party caller.'" *Williams v. PillPack LLC*, 644 F. Supp. 3d 845, 851 (W.D. Wash. 2022) (quoting *Henderson v. United Student Aid Funds, Inc.*, 918 F.3d 1068, 1072 (9th Cir. 2019)). The "bedrock theories of agency" include "actual authority, apparent authority, and ratification." *Id.* Each offers "an independent basis for . . . vicarious liability." *Bilek v. Fed. Ins. Co.*, 8 F.4th 581, 587 (7th Cir. 2021). Plaintiff need only plead one. Plaintiff adequately pleads all three at the pleadings stage.

*1.  The "Independent Contractor" Label Is Not Dispositive, and Agency Is a Fact-Intensive Question Unsuited to Resolution on a Motion to Dismiss.*

Before examining the three agency theories individually, two preliminary points dispatch the foundation of Compass's Motion.

*First*, the "independent contractor" label on which Compass rests its entire argument does not foreclose an agency relationship. Courts, including in the TCPA context, have consistently rejected the theory that because a contract calls the caller an "independent contractor," there can be no agency, nor is the contract's language dispositive. "Oregon law is clear that a contract's recitation of an independent-contractor relationship is not dispositive." *Slayman v. FedEx Ground Package Sys., Inc.*, 765 F.3d 1033, 1042 (9th Cir. 2014). Relatedly, even *if* the Court were to hold that Olson and Sanger were acting as independent contractors, that is not dispositive, since an independent contractor can still be an agent. *Ochoa v. J.B. Martin & Sons Farms, Inc.*, 287 F.3d 1182, 1189 (9th Cir. 2002) ("An independent contractor who is not an employee of a principal can nevertheless still be that principal's agent.").

Throughout its brief, Compass improperly conflates the *employee/independent contractor* analysis, which concerns tax treatment and various employment principles, with the

Oppn. Motion to Dismiss                          7

*principal/agent* analysis under the TCPA. These are distinct inquiries with distinct factors, and the former does not resolve the latter. That is because the status of an agent and independent contractor are "not mutually exclusive." *Castle Cheese, Inc. v. MS Produce, Inc.*, No. CIV.A 04-878, 2008 WL 4372856, at *7 (W.D. Pa. Sept. 19, 2008). "Under a contract, a party may be both an agent and an independent contractor." *Emtel, Inc. v. Lipidlabs, Inc.*, 583 F. Supp. 2d 811, 837 (S.D. Tex. 2008).

Compass's reliance on selectively quoted provisions of the materials it submits in this motion to dispatch Plaintiff's agency allegations is also foreclosed as a matter of Ninth Circuit law. In *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1003 (9th Cir. 2018), the Ninth Circuit expressly cautioned against exactly this use of the incorporation-by-reference doctrine, holding that "it is improper to assume the truth of an incorporated document if such assumptions only serve to dispute facts stated in a well-pleaded complaint." Although a court may consider documents incorporated by reference, it may not treat them as "resolv[ing] factual disputes against the plaintiff's well-pled allegations," nor use them to "insert [defendant's] own version of events into the complaint." *Id.* at 1002, 1014. Compass's Motion turns that rule on its head. Having drafted contractual and other documents it now submits its very self, Compass now asks this Court to assume the truth of every self-serving provision it quotes, disregard the FAC allegations that are in tension with those provisions, and draw the dispositive factual inference that no agency relationship could exist instead of looking to the totality of the parties' relationship, course of conduct, and contract in context. That is precisely the backdoor summary judgment motion incorporating evidentiary materials in 12(b)(6) clothing Khoja forbids. At the Rule 12(b)(6) stage, the FAC's allegations, not Compass's preferred reading of its own contracts,

Oppn. Motion to Dismiss                          8

control, and any ambiguity in the incorporated documents must be resolved in Plaintiff's favor. *Id.* at 1003.

*Second*, agency is a notoriously fact-bound question and is a jury question and should be submitted to a jury "unless the facts are clearly insufficient to establish agency or there is no dispute as to the underlying facts." *Harris v. Itzhaki*, 183 F.3d 1043, 1054 (9th Cir. 1999). At the motion to dismiss stage, the pleading bar for demonstrating agency is low and "liberal." *Plata v. Long Beach Mortg. Co.*, No. C 05-02746 JF, 2005 WL 3417375, at *8 (N.D. Cal. Dec. 13, 2005); *Dolemba v. Illinois Farmers Ins. Co.*, 213 F. Supp. 3d 988, 996 (N.D. Ill. 2016). Plaintiff need not allege facts peculiarly within Compass's possession, such as exactly how Compass directs its agents' daily calling conduct. *See Guadian v. DebtBlue LLC, No. EP-23-CV-329-KC*, 2024 WL 5184488, at *3 (W.D. Tex. Apr. 16, 2024) (ratification information "peculiarly within the possession and control of the defendant"). The plaintiff need only plead facts giving rise to a plausible *inference* of agency through the use of "generalized as opposed to evidentiary facts." *Klassen*, 702 F. Supp. 3d at 1059 (quoting *Mauer*). Whether Compass's control over its agents in fact rose to the level of an agency relationship is a jury question to be resolved after discovery, not on the pleadings, and not solely based on the self-serving contract language that Compass proffers, but rather as to the totality of the parties' relationship.

Therefore, as an initial matter, at a minimum, agency should be resolved after discovery, not on the pleadings. Compass's Motion fundamentally asks this Court to resolve fact-intensive agency questions, questions which are notoriously fact-bound, on the pleadings. That is not the law. Facts uniquely within Compass's possession bear directly on each agency theory, as will be addressed in greater detail below. These include whether Compass knew or should have known Olson and Sanger were engaging in telemarketing, whether Compass received revenue from

Oppn. Motion to Dismiss                                  9

sales generated by these calls, the content of communications between Compass and Olson/Sanger regarding TCPA compliance, whether Compass provided marketing guidance and training materials that touched on telephone solicitation, whether Compass stood to benefit from the calls, whether Compass had any process for receiving and honoring do not call requests, and more. None of those facts can be resolved on the pleadings, and all are proper subjects for discovery. *See Ewing v. Freedom Forever LLC*, No. 20-cv-880-JLS (AHG), 2021 WL 1087100, at *3 ("the precise details of the agency relationship need not be pleaded to survive a motion to dismiss" because the information necessary to connect all the players is likely in the defendant's sole possession).

Compass's Motion should be denied and the parties should proceed to discovery. But even to the extent that this Court were to consider each of the three theories of liability, Plaintiff has pled sufficient factual matter for each one of these three theories.

### 2. Olson and Sanger Acted with Compass's Actual Authority.

"An agent acts with actual authority when, at the time of taking action that has legal consequences for the principal, the agent reasonably believes, in accordance with the principal's manifestations to the agent, that the principal wishes the agent so to act." Restatement (Third) of Agency § 2.01; *Williams*, 644 F. Supp. 3d at 854. Actual authority may be either express (stated "in very specific or detailed language") or implied ("in a manner in which [the] agent believes the principal wishes the agent to act based on the agent's reasonable interpretation of the principal's manifestation"). *Hayhurst v. Keller Williams Realty, Inc.*, No. 1:19CV657, 2020 WL 4208046, at *5 (M.D.N.C. July 22, 2020) (denying motion to dismiss in TCPA vicarious liability case against real estate brokerage). Actual authority "does not require the principal to specify the singular acts for which . . . authority exists as long as the acts are incidental to or reasonably necessary to accomplish what is authorized." *John v. Keller Williams Realty, Inc.*, No.

Oppn. Motion to Dismiss                     10

619CV1347ORL40DCI, 2020 WL 10502631, at *2 (M.D. Fla. Feb. 4, 2020) (denying motion to dismiss). "An agent has authority to act to further the principal's objectives, as the agent reasonably understands the principal's manifestations and objectives." *United States v. Dish Network LLC*, 256 F. Supp. 3d 810, 923 (C.D. Ill. 2017) (cleaned up).

Compass's own documents create a textbook case of actual authority. The Independent Contractor Agreement ("ICA") appoints each agent, including Olson and Sanger, to provide "real estate brokerage services" on behalf of Compass. Compass's Terms of Engagement outline the services Olson and Sanger were expressly authorized to conduct, including marketing, representing buyers, tenants, landlords, or sellers in a real estate transaction, and soliciting listings, the very conduct in which Olson and Sanger were engaged when they called Plaintiff. Outbound telephone solicitation of potential clients is "incidental to" and "reasonably necessary to accomplish" that marketing mandate. *John*, 2020 WL 10502631, at *2.

Compass did not merely permit its agents to solicit business by telephone. Its Washington Agent Manual *expressly regulated* all digital and electronic marketing or solicitation (including, but not limited to, email and telephone), requiring agents to comply with applicable law. Far from being a prohibition, that provision is an *affirmative recognition* by Compass that its agents will market by telephone, and constitutes Compass's instruction to its agents on how to do so. Compass's National Agent Manual likewise devotes entire sections to TCPA compliance, instructions that would make no sense unless Compass understood and authorized telephone solicitation activity. Compass even calls its agents "telemarketers" in those sections, acknowledging that "[r]eal estate agents are considered telemarketers under this law."

Compass's rules on marketing content also show that Olson and Sanger were acting within the scope authorized by Compass when they made the calls. The ICA, for example,

Oppn. Motion to Dismiss                    11

provided a budget for "Broker-branded signs, business cards, logos, . . . and all other marketing-related costs." The Washington manual explicitly required all advertising to clearly and conspicuously identify Compass. These are *Compass's* directives to its agents to represent themselves as Compass when soliciting business. When Olson identified herself as a "Realtor" with "Compass" offering to list and relocate Plaintiff's property, when "Leah" stated "she was with 'Compass Realty,'" and when Sanger "stated that he was with Compass Real Estate", they were doing exactly what Compass's Manuals required them to do in soliciting listings. That use of Compass's name and brand supports the inference that the callers were authorized to act for Compass in initiating telemarketing communications and promoting its products, which is sufficient at the pleading stage. *See Hayhurst*, 2020 WL 4208046, at *5; *Usanovic v. EXP Realty, LLC*, No. C23-0687JLR, 2026 WL 864633, at *2 (W.D. Wash. Mar. 30, 2026) (granting class certification and holding that brokerage's training of agents and their use of brand name were vicarious liability questions resolvable on a class basis).

This is fundamentally different from the cases Compass cites. In *Usanovic v. Americana, L.L.C.*, 775 F. Supp. 3d 1133, 1141 (D. Nev. 2025), the record established that the brokerage had no control over agent calling, unlike here. The same is true of *Jones*. There, at summary judgment, and on a full factual record, the Ninth Circuit affirmed the District Court's holding that a car warranty administration company did not have sufficient control over a telemarketing agency that it exercised only limited control over. *Jones v. Royal Admin. Servs., Inc.*, 887 F.3d 443, 451 (9th Cir. 2018). It bears noting that *Jones* was decided on a full factual record and at summary judgment, not at a motion to dismiss stage as here. At the Rule 12(b)(6) stage, where all inferences are drawn in Plaintiff's favor, and where

Oppn. Motion to Dismiss                    12

agency is a notoriously fact-bound question typically requiring jury determination, Compass cannot rely on summary judgment holdings to foreclose discovery and obtain dismissal.

Compass's attempt to characterize its control over agents as mere "brand-protection measures and quality control," MTD at 11, cannot survive the plain text of the very documents on which Compass relies. These documents are not brand guides. They are not quality control manuals. They are direct evidence of control, requiring all digital and electronic marketing, including telephone calls, to comply with all applicable laws and rules, including the TCPA. Compass further paid for the aforementioned marketing expenses, directed how its agents were to co-brand with Compass in these marketing materials, and gave Compass the unilateral right to change, revise, update, and introduce policies as needed. "The power to give interim instructions distinguishes principals in agency relationships from those who contract to receive services provided by persons who are not agents." Restatement (Third) of Agency § 1.01 cmt. f.

Compass's business depends on its agents soliciting clients under Compass's banner, and Compass is compensated by a cut of the transactions its agents close using Compass-branded marketing. This is sufficient at any stage, let alone the pleadings stage, for a finding of *actual* authority. *See In re DISH Network*, 28 FCC Rcd. at 6592 (*apparent* authority may be found when seller provides "access to information and systems that normally would be within the seller's exclusive control" and "the authority to use the seller's trade name, trademark and service mark") (cleaned up).

Compass argues that the fact that its ICA and Manuals tell agents to comply with the law somehow defeats actual authority. That argument has already been rejected. In *Dish Network*, the Seventh Circuit rejected a similar argument that Dish was not liable because it required its agents

Oppn. Motion to Dismiss                    13

to comply with the TCPA. *United States v. Dish Network L.L.C.*, 954 F.3d 970, 975 (7th Cir. 2020). As yet another court has held when addressing a similar argument:

> [Defendant] responds that its contracts with the vendors "specifically forbade actions that would violate the law," and that in any case, the vendors did not have actual authority to violate the TCPA. But under federal common law, actual authority may be either express or *implied*. *Moriarty v. Glueckert Funeral Home, Ltd.*, 155 F.3d 859, 866 (7th Cir. 1998). To establish actual-authority liability, Moore must show that (1) Exploria and its vendors had a principal-agent relationship; (2) Exploria controlled or had the right to control the vendors; and (3) the vendors' conduct fell within the scope of its agency. Moore has presented plentiful evidence to show that any reasonable jury would have to find that Yodel and Prospects had actual authority to conduct the telemarketing calls in this case.

*Moore v. Club Exploria, LLC*, No. 1:19-CV-02504, 2025 WL 2755076, at *11 (N.D. Ill. Sept. 26, 2025) (cleaned up). That is precisely the situation here. Compass's Manuals do not prohibit outbound calling. Rather, they *regulate* it, that is, control it, and assume it will occur.

That distinction matters. In *Jones*, again, a case decided at summary judgment, the Ninth Circuit affirmed on the basis that plaintiffs failed to show actual authority to place the *unlawful* calls and simply pled a general agency relationship. On the facts there, the Ninth Circuit affirmed a finding of insufficient evidence of control. *Jones* expressly did not foreclose other agency theories like ratification or apparent authority, and it was largely confined to the facts. As *Jones* itself emphasized, 887 F.3d at 451 n.4, "our decision to adopt these Restatement factors is limited to the issue before the court. These factors are of use for determining whether a principal, who has hired third-party telemarketers, exercises sufficient control to be held vicariously liable under the TCPA to the same degree that an employer may be held liable for the actions of its employees . . . . We express no opinion on the usefulness of these factors in establishing other common law theories for holding a principal liable for the conduct of its agent."

"An employee's act is not within the scope of employment when it occurs within an independent course of conduct not intended by the employee to serve any purpose of the

Oppn. Motion to Dismiss                    14

employer." Restatement (Third) of Agency § 7.07(2). The inverse applies here, since telemarketing calls by Compass agents soliciting listings were *precisely* the purpose Compass hired these agents for. By contrast, here, as in *Moore* and *Dish Network*, Compass's contracts expressly *permit* telephone marketing and even instruct agents how to do it. The closer fit is *Hayhurst*, where the court denied the real estate brokerage Keller Williams's motion to dismiss TCPA vicarious liability claims on nearly identical facts. 2020 WL 4208046, at *5–6. Indeed, in *Williams*, in denying summary judgment, the Court held that there were sufficient questions of material fact based on similar allegations to here, to preclude summary judgment on an actual authority theory. 644 F. Supp. 3d at 853. At the pleading stage, the FAC's allegations concerning Compass's contract provisions, marketing controls, financial integration, and express regulation of telephone solicitation give rise to far more than a reasonable inference of actual authority.

This theory easily withstands dismissal.

### 3.  Olson and Sanger Acted with Compass's Apparent Authority.

Even if Plaintiff had failed to plead actual authority (she has not), the FAC separately alleges apparent authority. "Apparent authority arises from the principal's manifestations to a third party that supplies a reasonable basis for that party to believe that the principal has authorized the alleged agent to do the act in question." *NLRB v. Dist. Council of Iron Workers*, 124 F.3d 1094, 1099 (9th Cir. 1997); *see also* Restatement (Third) of Agency § 2.03. Apparent authority is established "from a third party's perspective" and attaches when defendant's "statements" or "conduct" reasonably "give the appearance that [Compass], the purported principal, authorized [Olson and Sanger], the purported agent, to initiate the Calls on its behalf." *Banks v. Pro Custom Solar*, 416 F. Supp. 3d 171, 175 (E.D.N.Y. 2018).

The FCC's illustrative examples of apparent authority indicia are instructive. *In re DISH Network*, 28 FCC Rcd. at 6592. Apparent authority is indicated where "the seller allows the

Oppn. Motion to Dismiss                    15

outside sales entity access to information and systems that normally would be within the seller's exclusive control," "the ability by the outside sales entity to enter consumer information into the seller's sales or customer systems," and "[t]he authority to use the seller's trade name, trademark and service mark." *Id.* (cleaned up). Each of these indicia is pleaded in the FAC.

Compass *required* Olson and Sanger to identify themselves as Compass agents in their marketing, *provided* them with Compass-branded marketing materials, signage, business cards, logos, and a Compass email address, *authorized* them to represent themselves as real estate agents on Compass's website, where they are prominently featured as Compass agents; and *clothed* them with "the authority to use [Compass's] trade name, trademark and service mark." *In re DISH Network*, 28 FCC Rcd. at 6592. The calls Plaintiff received invoked Compass's name directly. From Plaintiff's perspective, there was no indication whatsoever that Olson and Sanger were anything other than Compass agents acting on Compass's behalf.

Compass argues that apparent authority requires some direct statement from Compass on which Plaintiff relied, and that because Plaintiff had no direct communication with Compass, the theory fails. That argument misreads the law and the facts. First, Compass, the principal, *did* make outward representations, on its very website, that Olson and Sanger were Compass agents. Second, Olson and Sanger's conduct that gives rise to apparent authority include the principal's decision to permit the agent to use the principal's name, brand, and marketing, which are themselves manifestations attributable to the principal. *Banks*, 416 F. Supp. 3d at 174-75 ("Advanced Energy Solutions stated that the Calls had been placed to "promote the goods and services of [Defendant]." During Plaintiff's subsequent investigatory calls, a representative of Defendant confirmed that Advanced Energy Solutions was its operating service. . . . From the perspective of Plaintiff, Defendant's statements could reasonably give the appearance that

Oppn. Motion to Dismiss                              16

Defendant, the purported principal, authorized Advanced Energy Solutions, the purported agent, to initiate the Calls on its behalf."); *Hayhurst*, 2020 WL 4208046, at *8 ("Here, Keller Williams is alleged to have provided realtors with scripts to use while cold-calling individuals in which they are to refer to themselves as being "with Keller Williams Realty" and explain that "we're [your] County's number one agent in properties sold", "[w]e specialize in homes that should have sold but didn't", among other similar statements. The content of the telephone calls made to Hayhurst is traceable to Keller Williams by way of its extensive training and materials.").

Compass manifested its authorization by publicly listing Olson and Sanger as its agents on its website, by requiring them to identify themselves as Compass agents in every solicitation, by permitting them to use Compass's trade name, and by providing them training and marketing materials accordingly. Those manifestations by Compass are what gave rise to Plaintiff's reasonable belief of apparent authority, which is Compass' burden to disprove. *Cf. In re DISH Network*, 28 FCC Rcd. at 6593 (evidence of apparent-authority indicia "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent"). At the pleading stage, if plaintiff pleads the indicia of apparent authority, as here, the burden shifts to Compass. And Compass cannot meet its burden on a threshold motion where inferences run in plaintiff's favor.

Compass's cited cases do not help it. *Americana* and *Rahimian* both involved records in which the plaintiffs could offer only what were effectively "I was told this was [principal]" allegations without any evidence from the seller itself that authorized the use of its name or brand. *Contra Americana*, 775 F. Supp. 3d at 1141 ("She alleges no communication from Defendant stating that she could rely on the agents' statements, nor anything Defendant communicated to the agents that they had authority to act on behalf of BHHS. Finally, she does

Oppn. Motion to Dismiss                    17

not allege any statements made by the real estate agents upon which she relied."); *Rahimian v. Adriano*, No. 220CV02189GMNVCF, 2022 WL 798371, at *5 (D. Nev. Mar. 16, 2022) ("Plaintiff fails to plead sufficient facts demonstrating reasonable reliance."). Here, by contrast, Compass affirmatively authorized and indeed *required* the use of its name by its agents, placed them on its website, gave them branded materials, trained them, and regulated their outbound marketing. That is precisely the pattern courts have found sufficient to plead apparent authority. *See Banks*, 416 F. Supp. 3d at 174-75; *Hayhurst*, 2020 WL 4208046, at *8-*9.

At the pleading stage, the FAC clears the bar with room to spare.

### 4.  Compass Ratified Olson's and Sanger's Conduct.

The FAC also adequately pleads ratification at the pleadings stage. Ratification is "the affirmance of a prior act done by another, whereby the act is given effect as if done by an agent acting with actual authority." *Kristensen v. Credit Payment Servs. Inc.*, 879 F.3d 1010, 1014 (9th Cir. 2018) (quoting the Restatement). "A person ratifies an act by (a) manifesting assent that the act shall affect the person's legal relations, or (b) conduct that justifies a reasonable assumption that the person so consents." Restatement (Third) of Agency § 4.01. Thus, "[a] principal can ratify his agent's actions *either* by not repudiating them *or* by accepting their benefit." *Sphere Drake Ins. Ltd. v. Am. Gen. Life Ins. Co.*, 376 F.3d 664, 677 (7th Cir. 2004) (emphasis added); Restatement (Third) of Agency § 4.01, cmt. f ("A principal may ratify an act by failing to object to it or to repudiate it.").

A principal is deemed to have ratified where the principal either has knowledge of material facts or is "willfully ignorant" of them, that is, where the principal "had knowledge of facts that would have led a reasonable person to investigate further, but the principal ratified without further investigation." *Henderson v. United Student Aid Funds, Inc.*, 918 F.3d 1068, 1075 (9th Cir. 2019); Restatement (Third) of Agency § 4.06 cmt. d. And the FCC has long

Oppn. Motion to Dismiss                    18

instructed that "a seller would be responsible under the TCPA for the unauthorized conduct of a third-party telemarketer that is otherwise authorized to market on the seller's behalf if the seller knew (or reasonably should have known) that the telemarketer was violating the TCPA on the seller's behalf and the seller failed to take effective steps within its power to force the telemarketer to cease that conduct." *In re DISH Network*, 28 FCC Rcd. at 6592.

The FAC pleads a compelling ratification case. Plaintiff made a company-specific do not call request in writing on August 29, 2024: "Compass, do not call us or e-mail again, I am sorry." That request placed Compass, through Olson, who received it and is its agent, on notice that the calls were unlawful and that she wished to be placed on Compass's company-specific internal do not call list. Yet Compass agents continued calling, not only generically, but each time contacting Plaintiff about the same property Olson had been trying to list. At each new call, Plaintiff reiterated her company-specific do not call request. Compass, through its agents, continued anyway.

Compass itself admits that, to this day, it has not reprimanded, disciplined, or otherwise warned either Olson or Sanger about their outbound calling practices, or their plain failure to honor the Plaintiff's request to be placed on Compass' company-specific internal do not call list. Compass had the contractual right to terminate Olson and Sanger for cause, and its manuals and contracts specifically warned that violation of any of Compass' Do Not Call or other marketing rules could result in disassociation of that agent's Compass affiliation. Here, Compass did nothing. Despite learning of the calls, despite the company-specific do not call request, and despite the calls continuing through numerous agents seeking to sell the same property and repeating the same TCPA-violative conduct, Compass did not discipline, reprimand, or terminate Olson or Sanger. It did not change its policies. It took no corrective action whatsoever. That is

Oppn. Motion to Dismiss                    19

textbook ratification through willful ignorance, if not outright actual knowledge. *Henderson*, 918 F.3d at 1075; *Aranda v. Caribbean Cruise Line, Inc.*, 179 F. Supp. 3d 817, 831-33 (N.D. Ill. 2016) (holding sellers ratified telemarketers' conduct by accepting benefits of unlawful calls even after being put on notice of TCPA violations); *Katz v. Allied First Bank, SB*, No. 22-cv-05277, 2026 WL 636723, at *11 (N.D. Ill. Feb. 24, 2026) (denying summary judgment on ratification where seller failed to investigate agent violations and accepted the benefits of calling campaign). Here, the internal do not call requests and repeated calls from multiple Compass agents about the same property over the span of almost a year should have given Compass pause and cause to investigate further. *See Henderson*, 918 F.3d at 1075.

Like in *Katz*, *Aranda*, and *Henderson*, Compass *accepted the benefits* of Olson and Sanger's calls. The FAC alleges that Compass "ratified Olson and Sanger's conduct by accepting the lead and referrals generated as a result of Olson and Sanger's illegal telemarketing conduct," and that Compass "continu[ed] to receive commissions and fees from transactions procured through such calling activities." Because Compass collects a cut on every commission its agents earn, each transaction generated by Compass-branded agent telemarketing puts money in Compass's pocket directly. Given that a principal can ratify an agent's actions by accepting their benefit, and Plaintiff has sufficiently pled that Compass did so here, the Plaintiff has adequately pled ratification.

Compass argues that ratification cannot attach because Compass did not know prior to this lawsuit that Olson and Sanger were calling numbers on the NDNCR or ignoring internal DNC requests. That position fails for four independent reasons.

*First*, Olson herself received and ignored Plaintiff's company-specific do not call request on August 29, 2024. Olson is Compass's agent. Knowledge acquired by an agent acting within

the scope of their agency is imputed to their principal, regardless of whether the agent actually communicates that knowledge to the principal. *Container Recovery, Inc. v. Shasta Nw., Inc.*, No. CIV. 05-1749-PK, 2007 WL 1724937, at *6 (D. Or. June 11, 2007); *see* Restatement (Third) of Agency § 5.03. Compass, therefore, had actual knowledge of Plaintiff's company-specific do not call request by virtue of Olson's knowledge, yet Compass agents continued to call Plaintiff afterward, at the same telephone number, and seeking to list the same property.

*Second*, even setting aside imputed knowledge, Compass was at least willfully ignorant. Compass's manuals required agents to "maintain, regularly update, and check the National, State and your own internal Do Not Call lists before reaching out to a prospect." That presupposes that Compass has a process to record and honor company-specific do not call requests. But the FAC plainly alleges that, despite any process, the requests were ignored. Compass's failure to audit, enforce, or even check whether its agents complied with Compass's own internal DNC policies is exactly the "willful ignorance" that constitutes ratification. *Henderson*, 918 F.3d at 1075; Restatement (Third) of Agency § 4.06 cmt. d.

*Third*, and with specific respect to the caller ID claims that Compass also seeks to dismiss, as Plaintiff alleges, "[a] reasonable seller would investigate why their agents would be calling numbers . . . using illegal caller IDs to place the calls." The FAC alleges Compass did not investigate. It had ample information that should have triggered investigation as to the caller ID claims, including Plaintiff's written do not call request to Olson, followed by the subsequent calls to Plaintiff by different Compass agents about the same property, spanning months. A principal that receives repeated red flags and does nothing cannot claim it had no duty to investigate. *Henderson*, 918 F.3d at 1075.

Oppn. Motion to Dismiss                        21

*Fourth*, at the pleading stage, whether Compass had actual knowledge or was willfully ignorant is a factual question usually reserved for the factfinder. *See Kristensen*, 879 F.3d at 1014–15 (determining ratification at summary judgment); *Katz*, 2026 WL 636723, at *10–11 (denying summary judgment on ratification). The FAC alleges Compass had knowledge and failed to investigate. Those allegations must be accepted as true on this Motion.

Plaintiff's ratification theory, like her actual-authority and apparent-authority theories, is independently sufficient to defeat dismissal.

## C. Independently, Compass Is Liable Under 47 U.S.C. § 227(c)(5)'s Statutory "On Behalf Of" Seller-Liability Test, Without Regard to Classical Agency.

Even if the Court were to find Plaintiff's agency pleading insufficient (it should not), Compass is independently liable as a "seller" under 47 U.S.C. § 227(c)(5) itself. Unlike § 227(b), which on its face targets only entities that "make" or "initiate" the call, § 227(c)(5) creates a private right of action for any person who receives calls "by *or on behalf of* the same entity in violation of the regulations." 47 U.S.C. § 227(c)(5) (emphasis added). That "on behalf of" language is significant. It extends liability *beyond* the entity that physically placed the call to the entity whose goods or services were being marketed on the call.

That statutory "on behalf of" text is the end of the road for Compass. This case is, on its face, a paradigm "on behalf of" case. Olson and Sanger called Plaintiff to try to list a property in their positions as Compass agents. They identified themselves as Compass agents. They promoted Compass's real estate services. Their economic interest, and Compass's, was in generating a transaction that would pay Compass a commission, of which Compass would directly collect a portion. The calls were placed "on behalf of" Compass under any reasonable reading of that phrase.

Oppn. Motion to Dismiss                    22

That plain reading of the statutory text is also what the FCC has long held. Over thirty years ago, the FCC explained that its TCPA "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In the Matter of Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 10 F.C.C. Rcd. 12391 (1995). The FCC reaffirmed that principle in *Dish Network*, explaining that sellers may not avoid TCPA liability "by outsourcing its telemarketing activities to unsupervised third parties," because that would "leave consumers in many cases without an effective remedy for telemarketing intrusions." 28 FCC Rcd. at 6588. The FCC specifically held that "because sellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy." *Id.* (cleaned up). That is a direct quote from the FTC's own observation, and it is exactly the problem the "on behalf of" language was drafted to solve, for precisely such a situation as here.

The Northern District of Illinois addressed this very issue in *Katz*.

The *Katz* court opined, but decided it did not need to reach the issue, that, in light of the Supreme Court's recent decision in *McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*, 606 U.S. 146 (2025), "§ 227(c)(5) includes language that explicitly extends vicarious liability to violations under that subsection: it allows 'persons' to bring an action if they have 'received more than one telephone call within any 12-month period <u>by or on behalf of the same entity</u> in violation of the regulations.'" 2026 WL 636723, at *7. Under *McLaughlin*, a district court "is not bound by the FCC's interpretation of the TCPA," and should instead "interpret the statute as courts traditionally do under ordinary principles of statutory interpretation, affording appropriate respect to the agency's interpretation." *Id.* at *6. Although the *Katz* court agreed with the FCC that a seller can be vicariously liable under § 227(c) under general agency principles, after

analyzing the statutory text independently after *McLaughlin*, it also opined that the FCC's "on behalf of" reading of § 227(c)(5) extended to create an even *broader* liability standard than common law agency. *Id.* That analysis applies here with equal force.

The *Katz* Court cited favorably to the *Dish Network* dissent, which argued the FCC majority was not *broad enough* in recognizing vicarious liability, and which read § 227(c) as creating an even *broader* liability standard than common law agency. *See In re DISH Network*, 28 FCC Rcd. at 6602 (Pai, Comm'r, dissenting in part) ("[U]nder section 227(c), third-party liability exists whenever a telemarketer initiates a call on a seller's behalf, even if that telemarketer is not under the seller's control."). In *Dish Network*, Commissioner Pai expressly explained why it was "implausible as a matter of statutory construction" to impose the vicarious liability standards required by Section 227(b)'s silence on the scope of third-party liability applicable to Section 227(b) violations, as opposed to the express language addressing 227(c) violations. *Id.* The presence of broader language in Section 227(c) is strong evidence that Congress did not intend a one-size-fits-all approach. *Id.* And for that matter, the FCC majority expressly left that broader reading that Commissioner Pai indicated open. *See id.* at 6586 (leaving open "the possibility that we could interpret section 227(c) to provide a broader standard of vicarious liability for do-not-call violations").

After *McLaughlin*, courts are no longer bound to accept the FCC's 2013 Dish Network interpretation as dispositive, nor accept its one-size-fits-all approach. Critically, *McLaughlin* cuts both ways. Courts must now independently interpret the text of the statute, and the statutory "on behalf of" text is, if anything, more favorable to Plaintiff than the FCC's agency-based framework. Post-*McLaughlin* decisions have agreed that § 227(c)(5)'s "by or on behalf of" language independently supports seller liability as a matter of statutory construction. *See Katz*,

Oppn. Motion to Dismiss                          24

2026 WL 636723, at *6–7; *Moore*, 2025 WL 2755076, at *10–11 (N.D. Ill. Sept. 26, 2025) (finding post-*McLaughlin* that a seller may be vicariously liable for third-party violations of § 227(b) and conducting its own independent statutory analysis to reach that conclusion).

On the FAC's allegations, Compass is the seller "on whose behalf" every call at issue was placed. Olson and Sanger called to sell real estate services under the Compass brand. Compass's name was invoked on every call. Compass stood to benefit financially from every successful solicitation. That is sufficient for seller liability under the plain language of § 227(c)(5), independent of whether Compass exercised day-to-day control over the calls, and whether or not the Court reaches Plaintiff's three classical agency theories.

### D. Plaintiff's Internal Do-Not-Call Claim Under 47 C.F.R. § 64.1200(d) States a Claim Against Compass Directly, Independent of Classical Agency.

Apropos of Section 227(c)'s imposition of liability on those on whose behalf calls are made, Plaintiff's claim under the Internal Do-Not-Call List regulation, 47 C.F.R. § 64.1200(d), warrants separate treatment because § 64.1200(d) imposes affirmative obligations on the seller itself, not merely on the individual dialer, that cannot be delegated away by contract label. The regulation requires that "[n]o person or entity shall initiate . . . any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive such calls." 47 C.F.R. § 64.1200(d) (cleaned up). Those procedures must include a written company-specific do not call policy (§ 64.1200(d)(1)), training of all personnel engaged in telemarketing (§ 64.1200(d)(2)), recording of company-specific requests and placement of the requested numbers on an internal list within a reasonable time (§ 64.1200(d)(3)), and identification of the entity on whose behalf the call is being made (§ 64.1200(d)(4)). Under Section 227(c), as explained above, that duty

runs to the seller *on whose behalf* telemarketing is conducted. Section 64.1200(d) claims may therefore also be stated directly against the seller, without resort to common-law agency analysis.

Against that regulatory backdrop, the FAC states a straightforward § 64.1200(d) claim against Compass. Plaintiff made a written, company-specific do not call request directed explicitly to Compass: "Compass, do not call us or e-mail again, I am sorry." Compass's own policies confirm that such company-specific requests must be honored and presupposes that Compass itself maintains the internal infrastructure required to record and enforce them. Yet after Plaintiff's request, at least four *additional* Compass-branded calls followed about the same property over a span of roughly ten months. Whether Compass in fact maintained the written procedures, trainings, records, and internal list required by § 64.1200(d), and whether any such procedures were actually implemented and enforced, and why the Plaintiff received calls anyway, are quintessential fact questions reserved for discovery. But the FAC's well-pleaded allegations that (a) a company-specific request was made to Compass by name, (b) multiple Compass callers thereafter contacted Plaintiff about the same property, and (c) Compass has taken no disciplinary or corrective action in response, suffice to state a § 64.1200(d) claim at the pleading stage. Compass's Motion does not meaningfully engage with these independent duties, instead lumping the IDNC claim into its vicarious liability argument, and it therefore provides no basis on which this claim can be dismissed. It should not be.

### E. 47 C.F.R. § 64.1601(e) Is Enforceable Through the Private Right of Action in 47 U.S.C. § 227(c)(5).

Compass's final argument, that 47 C.F.R. § 64.1601(e) does not confer a private right of action, has been squarely rejected by more recent authority in this very District, as Defendant is forced to acknowledge. In *Weingrad v. DaBella Exteriors, LLC*, No. 3:25-CV-396-SI, 2026 WL 496609 (D. Or. Feb. 23, 2026), Judge Simon analyzed the identical argument Compass makes

here and held that § 64.1601(e) is enforceable through the private right of action in 47 U.S.C. § 227(c)(5). That holding is directly on point and is the most recent and controlling authority in this District.

Compass's argument rests on *Griffin v. Am.-Amicable Life Ins. Co. of Texas*, No. 6:24-CV-00243-MC, 2024 WL 4333373, at *5 (D. Or. Sept. 27, 2024), an opinion that predates *Weingrad* by seventeen months. As the *Weingrad* court candidly acknowledged, it was rendering a split decision and acknowledged Chief Judge McShane's previous holding in *Griffin*. *Weingrad*, 2026 WL 496609, at *3. After analyzing the question independently, however, *Weingrad* concluded that *Griffin* and its predecessors got it wrong. 2026 WL 496609, at *3–6.

The analytical framework in *Weingrad* is correct and should be followed here. The question is not whether the regulation itself creates a right of action. Regulations cannot do so. *Alexander v. Sandoval*, 532 U.S. 275, 291 (2001) ("[L]anguage in a regulation can conjure up a private cause of action that has not been authorized by Congress. Agencies may play the sorcerer's apprentice but not the sorcerer himself.").The question is whether the regulation was promulgated under a section of the TCPA that *does* contain a private right of action. Congress created such a right of action in 47 U.S.C. § 227(c)(5). Therefore, if § 64.1601(e) was promulgated under § 227(c), a private right of action exists to enforce it.

Working through the possible statutory bases for the subject regulation systematically, as the *Weingrad* court had done, only § 227(c) fits. "It is axiomatic that an administrative agency's power to promulgate legislative regulations is limited to the authority delegated by Congress." *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988).

*Weingrad* was not decided in a vacuum. It itself was heavily based upon the Eastern District of Michigan's recent holding in *Dobronski v. Selectquote Ins. Servs.*, 773 F. Supp. 3d

Oppn. Motion to Dismiss                    27

373, 375 (E.D. Mich. 2025) ("SelectQuote II"). In *SelectQuote II*, the Eastern District undertook a comprehensive analysis of the genesis of the private right of action for caller ID claims under 47 C.F.R. § 64.1601(e) *SelectQuote II*, 773 F. Supp. 3d at 375. *SelectQuote II* represents the most comprehensive analysis of Section 1601(e) undertaken by a Court to date, and its reasoning was adopted in full by the *Weingrad* Court. Since that decision, *every single court* to consider a Section 64.1601(e) caller ID claim has held that there is a private right of action for violations thereof. *Newell v. JR Cap., LLC*, 791 F. Supp. 3d 571 (E.D. Pa. 2025); *Dobronski v. CHW Grp., Inc.*, 2025 WL 2426370, at *7; *Dobronski v. Juliasangel Mktg., LLC*, No. 2:24-CV-12379-TGB-APP, 2025 WL 2659265, at *11 (E.D. Mich. Sept. 17, 2025); *Barton v. Bright Solar Marketing LLC*, No. 3:25-CV-05310-DGE, 2025 WL 2880136, at *5 (W.D. Wash. Oct. 9, 2025); *Dobronski v. Daraujo*, No. CV 25-10169, 2025 WL 3908484, at *8 (E.D. Mich. Dec. 1, 2025), *report and recommendation adopted*, No. 25-10169, 2025 WL 3708891 (E.D. Mich. Dec. 22, 2025); *Barton v. Am. Fam. Life Assurance Co. of Columbus*, No. 3:25-CV-05671-TMC, 2026 WL 25742, at *5 (W.D. Wash. Jan. 5, 2026); *Weingrad*, 2026 WL 496609, at *6; *Novia v. Mobiz, Inc.*, No. 25-CV-11036-AK, 2026 WL 770036, at *7 (D. Mass. Mar. 18, 2026); *Novia v. Mobiz, Inc.*, No. 25-CV-11036-AK, 2026 WL 752181, at *4 (D. Mass. Mar. 17, 2026); *Carr v. Humana Inc.*, No. 3:25-cv-00476-DJH, ECF No. 28 (W.D. Ky. Mar. 23, 2026); *Dobronski v. Uppleger*, No. 25-10168, 2026 WL 905121, at *10 (E.D. Mich. Mar. 31, 2026).

As the *SelectQuote II* Court observed*,* only five subsections of the TCPA authorize FCC rulemaking and the promulgation of associated regulations:

• § 227(b)(2) authorizes the FCC to implement requirements that relate to the use of prerecorded voices and automatic telephone dialing systems;

• § 227(c) authorizes the FCC to promulgate rules relating to the "need to protect residential telephone subscribers' privacy rights";

• § 227(d)(1)–(3) allow regulations relating to technical and procedural standards related to fax machines, automatic telephone dialing systems, and "systems that are used to transmit any artificial or prerecorded voice message";

• § 227(e)(3) provides for regulations relating to misleading or inaccurate caller ID; and

• § 227(i) allows for the FCC to promulgate regulations to streamline information sharing with the FCC related to violations

*SelectQuote II* at 376. As the Court observed in *SelectQuote II*, all but § 227(c) are quickly eliminated as not even remotely applicable to the statutory provision here. The statutory provision at issue here could not have been promulgated pursuant to Section 227(d), because that Section relates only to fax machines and automatic telephone dialing systems, not to telemarketing calls in general, just as Section 227(b), which is inapplicable for identical reasons. Section 227(e)(3), though it deals with Caller ID, was enacted *after* § 64.1601(e), so that's out. And, finally, the transmission of accurate caller ID name has nothing to do with information sharing with the FCC relating to violations contained in Section 227(i). *Id.*

What remains is § 227(c). Both the decisions in *Weingrad* and *SelectQuote II* are supported by the legislative history under which the instant subsection was enacted. The subject regulation here, 47 C.F.R. § 64.1601(e), was promulgated in 2003 under rulemaking Congress explicitly authorized when it passed the Do Not Call Implementation Act of 2003, 15 U.S.C. § 6153 ("2003 Act"), which related to *consumer privacy*, the mainstay of Section 227(c).

Pursuant to that mandate, the FCC began a rulemaking proceeding that expressly sought comment on whether "network technologies have been developed over the last decade," and which ultimately resulted in an order promulgating the implementation and incorporation of the instant caller ID legislative rule, as well as Do Not Call Registry rules. *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991* ("2003 TCPA Order"), CG Docket No. 02-278, Report and Order, 18 FCC Rcd. 14014, 14118. As the FCC explained in that 2003 TCPA

Oppn. Motion to Dismiss                    29

Order rulemaking proceeding, "The new rules will also require all companies conducting telemarketing to transmit caller identification (caller ID) information, when available, and prohibits them from blocking such information." *Id.* at 14017. "[T]he 2003 FCC [TCPA O]rder applies to section 227(c). . . . Therefore, Radvansky may bring a case." *Radvansky v. Kendo Holdings, Inc.*, 744 F. Supp. 3d 1314, 1321, 1321 n.3, n.4 (N.D. Ga. 2024).

Section 64.1601(e) serves precisely the consumer protection functions Congress mandated in Section 227(c). It ensures that consumers receiving telemarketing calls know the identity of the telemarketer, enabling them to lodge do not call requests and exercise the very privacy rights § 227(c) was enacted to protect. Indeed, Section 64.1601(e) was promulgated in 2003 *in the very same FCC order* that adopted the National Do Not Call Registry rules in § 64.1200(c), rules that Compass concedes are enforceable through § 227(c)(5). It would be incongruous to hold that the same FCC order created a private right of action for the DNC requirements but somehow failed to create one for the caller-ID requirements adopted in the same rulemaking under the same statutory authority. *See Weingrad*, 2026 WL 496609, at *5–6. Both are consumer privacy regulations. Both were promulgated under § 227(c). Both are enforceable under § 227(c)(5).

And, as both the *SelectQuote II* and *Weingrad* cases indicate, each of the cases preceding *SelectQuote II* were based on previous cases relying on faulty reasoning, including *SelectQuote I* and *Worsham*. In fact, the Defendant's authorities largely reflect a kind of jurisprudential echo chamber, with courts repeating inherited conclusions rooted in underdeveloped, faulty reasoning that federal courts only first started to begin to correct after *SelectQuote II*.

Compass invokes the same faulty *Griffin* and *Worsham* line of reasoning that the *SelectQuote II* Court addressed at length. And, as indicated above, since *SelectQuote II*, no court

Oppn. Motion to Dismiss                    30

has adopted the same faulty line of reasoning adopted by pre-*SelectQuote II* courts. All the pre-*SelectQuote II* courts impermissibly severed the subject regulation, promulgated under § 227(c), from the § 227(c)(5) private right of action Congress provided. That position cannot be reconciled with *Alexander*, *Bowen*, and the litany of other courts to have addressed the issue post-*SelectQuote II*. If the regulation was promulgated under § 227(c), as it must have been, then it is enforceable through § 227(c)(5). The tide has shifted definitively. This Court should follow *Weingrad*, not *Griffin*.

Compass's footnoted argument that the FAC "pleads [Plaintiff] out of" her Caller ID claim against Compass similarly fails. The relevant regulations, by their very text, contemplate that the telemarketer or the seller (i.e. Compass), will be liable. Moreover, the Caller IDs transmitted plainly did not allow the Plaintiff to make a *company-specific* internal do not call request to Compass. Thus, Compass's argument is self-defeating. The caller IDs, by their very admission, would not have allowed the Plaintiff to make an internal do not call request to Compass. Moreover, that those callers' CNAM information was transmitted as mere geographic data in two instances, rather than as Compass's or the telemarketer's name, is a quintessential § 64.1601(e) violation. Whether Compass has a record of those callers, or uses them under pseudonyms, or contracted out to a lead-generation affiliate, is a discovery issue, not a pleading issue because it has nothing to do with the claim's statutory text. *Newell*, 791 F. Supp. 3d at 584 (rejecting similar argument that calls did not violate § 64.1601(e) when a website was disclosed on the calls). This Court should follow every Court, including this one, to have considered and addressed the caller ID claims post-*SelectQuote II* and hold that Plaintiff has stated a claim for violation of the Caller ID regulations as well.

Oppn. Motion to Dismiss                           31

**Conclusion**

For the foregoing reasons, the Motion should be denied. Alternatively, to the extent the Court finds that any aspect of the FAC is insufficient, Plaintiff respectfully requests leave to amend to have the opportunity to correct any deficiencies.

RESPECTFULLY SUBMITTED AND DATED this April 17, 2026.

> s/Andrew Roman Perrong
> Andrew Roman Perrong, OSB No. 243320
> a@perronglaw.com
> Perrong Law LLC
> 2657 Mount Carmel Avenue
> Glenside, PA 19038
> 215-225-5529
> Lead Attorney for Plaintiff and the Proposed Class

**CERTIFICATE OF WORD COUNT**

This brief complies with the applicable page-count limitation under LR 7-2(b), 26-3(b), 54-1(c), or 54-3(e) because it contains undrr 35 pages, including headings, footnotes, and quotations, but excluding the caption, table of contents, table of cases and authorities, signature block, exhibits, and any certificates of counsel.

Dated: April 17, 2026.

> */s/ Andrew Roman Perrong*
> Andrew Roman Perrong, Esq.

**CERTIFICATE OF SERVICE**

I certify that I filed the foregoing via ECF on the below date, which will automatically send a copy to all attorneys of record on the case.

Dated: April 17, 2026              */s/ Andrew Roman Perrong*
                                   Andrew Roman Perrong,

Oppn. Motion to Dismiss                    32