Tadjedin Thomas & Engbloom Law Group LLP

JULIE ENGBLOOM, OSB No. 066988
juliee@ttelawgroup.com
1211 NW Glisan Street, Suite 203
Portland, Oregon 97209
Telephone: 503-546-0675
**LEAD COUNSEL**

VERA WARREN, OSB No. 194747
veraw@ttelawgroup.com
1211 NW Glisan Street, Suite 203
Portland, Oregon 97209
Telephone: 503-894-9944

Sheppard, Mullin, Richter & Hampton LLP

CALON NYE RUSSELL, OSB No. 094910
crussell@sheppardmullin.com
4 Embarcadero Ctr, Suite 1700
San Francisco, CA 94111
Telephone: 415-774-3159

DANE C. BRODY CHANOVE, *admitted pro hac vice*
dbrodychanove@sheppard.com
12275 El Camino Real, Suite 100
San Diego, California 92130
Telephone: 858-720-8900

JAY T. RAMSEY, *admitted pro hac vice*
jramsey@sheppardmullin.com
1901 Avenue of the Stars
Suite 1600
Los Angeles, California 90067
Telephone: 310-228-3700

*Attorneys for Defendants*
COMPASS WASHINGTON, LLC and
COMPASS, INCORPORATED

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

[PORTLAND DIVISION]

| | |
|---|---|
| JESSICA MURCH, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>COMPASS WASHINGTON, LLC, COMPASS, INC., RACHEL OLSON, and ANSEL SANGER,<br><br>Defendants. | Case No. 3:25-cv-01039-SB<br><br>*Hon. Stacie F. Beckerman*<br><br>**DEFENDANTS COMPASS WASHINGTON, LLC AND COMPASS, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>Request for Oral Argument |

**TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ....................................................................................................................1

II.     ARGUMENT ..........................................................................................................................1

        A.      Compass Did Not Waive Its Rule 12(b)(6) Challenge By Answering The
                Original Complaint ...................................................................................................1

        B.      Compass Cannot Be Held Vicariously Liable For The Alleged Calls To
                Plaintiff ....................................................................................................................3

                1.      Plaintiff Fails to Show an Agency Relationship Between Compass
                        and its Real Estate Agents.............................................................................3

                2.      Plaintiff Fails to Show Compass Real Estate Agents Had Actual
                        Authority to Place Calls in Violation of the TCPA ......................................4

                3.      Plaintiff Fails to Show Compass Real Estate Agents Had Apparent
                        Authority to Place Calls in Violation of the TCPA ......................................6

                4.      Plaintiff Fails to Show Compass Ratified Calls Placed in Violation
                        of the TCPA ..................................................................................................7

        C.      Compass Cannot Be Held Directly Liable For The Alleged Calls To
                Plaintiff ..................................................................................................................10

        D.      47 C.F.R. § 64.1601(e) Is Not Enforceable Through the Private Right of
                Action in 47 U.S.C. § 227(c)(5) And, Even If It Was, Plaintiff Has Failed
                To State A Claim .....................................................................................................12

III.    CONCLUSION .....................................................................................................................14

**DEFENDANTS COMPASS
WASHINGTON, LLC AND COMPASS,
INC.'S REPLY IN SUPPORT OF
MOTION TO DISMISS**          -i-

TADJEDIN THOMAS & ENGBLOOM LAW GROUP LLP
1211 NW Glisan Street, Suite 203
Portland, Oregon 97209

## I.    INTRODUCTION

Defendants Compass Washington, LLC, and Compass, Inc. (collectively, "Compass") explained in its Motion why the allegations of the First Amended Complaint ("FAC") are insufficient to establish vicarious liability under any available theory. Compass cited binding Ninth Circuit precedent and numerous on point district court decisions from this Circuit dismissing similar Telephone Consumer Protection Act ("TCPA") claims for failure to sufficiently plead vicarious liability. Plaintiff mostly ignores these authorities, relying instead on distinguishable, out-of-circuit cases. Binding authority from this Circuit plainly shows, however, that Plaintiff's vicarious liability theory cannot proceed. In addition, and in lieu of substantive allegations, Plaintiff leans heavily on allegations related to Compass's marketing and branding—none of which are relevant to the manner and means by which Compass real estate agents placed the telephone calls at issue, and none of which demonstrate that Compass authorized, directed, or ratified calls made in violation of the TCPA.  This case should end here and now before the Court and the parties are forced to expend more resources. The claims should be dismissed with prejudice.

## II.    ARGUMENT

### A.    Compass Did Not Waive Its Rule 12(b)(6) Challenge By Answering The Original Complaint

Plaintiff argues in her Opposition that Compass waived its Rule 12(b)(6) challenge by answering the original complaint and that the instant Motion to Dismiss is therefore untimely. Plaintiff is wrong.

As a preliminary matter, this Court's Order (ECF No. 24) granting Plaintiff's Motion for Leave to File an Amended Complaint (ECF No. 20), expressly provides that "Defendants may file a motion to dismiss."  That express authorization is dispositive, and the inquiry need go no further.

This Court's express authorization of the instant Motion notwithstanding, Plaintiff's citation to *Brooks v. Caswell*, No. 3:14-CV-01232-AC, 2016 WL 866303, at *2 (D. Or. Mar. 2, 2016) does not otherwise preclude the Court from permitting such a motion to proceed.  While the

court there noted that "[g]enerally, the Ninth Circuit regards post-answer 12(b) motions to dismiss as untimely," *id.* at *2, it went on to acknowledge that "[w]hether amending a complaint revives a defendant's opportunity to file a motion to dismiss after he or she has already filed an answer to the original complaint ***appears to be an issue of first impression in the Ninth Circuit***,"[1] *id.* (emphasis added), and that district courts "have nevertheless exercised their discretion and entertained untimely post-answer motions to dismiss on amended complaints for the sake of judicial economy." *Id.* at *4 (citing cases). Ultimately, the *Brooks* court decided not to exercise this discretion, finding that the new allegations there "did not create a new basis on which to assert a post-answer motion to dismiss." *Id.* at *3 (citations modified). That is not the case here.

As explained in the Motion, Plaintiff incorporates <u>for the first time</u> in her FAC various documents that were produced in discovery. The contents of these documents—which Compass could not have cited in a motion as to the original complaint without going beyond the pleadings— definitively preclude Plaintiff from stating a vicarious theory of liability against Compass for the calls placed by Rachel Olson and Ansel Sanger. As such, and unlike in *Brooks*, Plaintiff's inclusion of these documents in her FAC "create[s] a new basis on which to assert a post-answer motion to dismiss." *Id.* Moreover, judicial economy favors resolving these issues now through Compass's Motion to Dismiss, rather than requiring Compass to re-answer the FAC and thereafter move separately for judgment on the pleadings. *See Parra, Tr. of Laura E. Parra Revocable Tr. Dated Sept. 9, 1994, v. Parra*, No. 20-CV-839-DMS-JLB, 2021 WL 2038323, at *3 (S.D. Cal. May 20, 2021) (rejecting the plaintiff's argument that the defendant waived its right to move to dismiss the amended complaint by answering the original complaint, and holding that because "a motion to dismiss and a motion for judgment on the pleadings are analyzed under a substantially identical

---

[1] In fact, in one unpublished opinion, the Ninth Circuit ***affirmed*** a district court's ruling on a motion to dismiss even though the defendant had previously filed an answer and moved for summary judgment. *Adesanya v. I.N.S.*, No. 92-15338, 1993 WL 210801, at *1 (9th Cir. June 16, 1993). The Ninth Circuit offered no discussion of the issue, but noted that "the motion to dismiss was a proper response to [plaintiff]'s amended complaint." *Id.*

standard," judicial economy counseled in favor of addressing the pending motion to dismiss rather than requiring the defendant to re-answer and separately move for judgment on the pleadings)..

**B.      Compass Cannot Be Held Vicariously Liable For The Alleged Calls To Plaintiff**

  **1.      *Plaintiff Fails to Show an Agency Relationship Between Compass and its Real Estate Agents***

  As set forth in the Motion, both the Independent Contractor Agreement and Broker's Terms of Engagement incorporated by reference in Plaintiff's FAC specify that Compass real estate agents are independent contractors (Mot. at 6), and "an agency relationship is not created where the agent is an 'independent contractor.'" (*Id.* (citing *World Mix Ent., Ltd. v. Bone Thugs Harmony, Inc.*, No. CV 07-02159 DDP (EX), 2009 WL 10671949, at *3 (C.D. Cal. Mar. 3, 2009.))

  Contrary to Plaintiff's contention, Compass does not "rest[] its entire vicarious liability challenge on the 'independent contractor' *label*" (Opp. at 1, 7 (emphasis added).)  Indeed, as Plaintiff points out, "agency is a notoriously fact-bound question" (*id.* at 9), and "a contract's recitation of an independent-contractor relationship is not dispositive. (*Id.* at 7.)  Instead, Compass's argument is based on the very facts Plaintiff contends are necessary to resolve the issue. As explained in the Motion, "[a]lthough the right to control <u>the result</u> is inherent in both independent contractor relationships and principal-agency relationships; it is the right to control <u>the means and manner</u> in which the result is achieved that is significant in determining whether a principal-agency relationship exists." (Mot. at 6-7 (emphasis added and in original)(citing *World Mix Ent., Ltd.*, 2009 WL 10671949, at *3). In the TCPA context, this requires a showing that Compass "controlled or had the right to control the real estate agents—*specifically the manner and means of the calls conducted*." (*Id.* at 7 (emphasis added and in original)(citing *Usanovic v. Americana, L.L.C.*, 775 F. Supp. 3d 1133, 1139 (D. Nev. 2025)).)  Plaintiff would have this Court believe that Compass real estate agents are independent contractors in "name" only. This is belied by the very documents incorporated by reference in Plaintiff's FAC, which show that Compass does not control the manner and means by which its real estate agents carry out their work, <u>at all</u>—

let alone the manner and means by which its real estate agents place marketing telephone calls. (*Id.* at 8 (citing Ramsey Decl., ¶ 8, Ex. E at 2 ("Broker will not . . . dictate Agent's day-to-day performance of the Services (e.g., schedule, hours, meetings, time off, etc.)").)

Plaintiff urges that Compass asks this Court to "disregard the FAC allegations that are in tension with those provisions." (Opp. at 8.) Tellingly, however, the three pages Plaintiff spends arguing she has adequately alleged an agency relationship do not contain **a single citation to any specific paragraph of her FAC**.[2] This is because the FAC does not include any allegations demonstrating otherwise. Indeed, the FAC does not make any of the allegations that courts considering similar claims have held would be sufficient to establish an agency relationship in the context of the TCPA. For example, Plaintiff does not allege that Compass: (i) sets quotas for the number of telephone calls that real estate agents have to make; (ii) conducts mandatory trainings directing how to make telephone calls; or (iii) requires real estate agents to use dialers, telephone number lists, and vendors that Compass recommends. (Mot. at 7–8 (citing *Jones v. Royal Admin. Servs.*, 887 F.3d 443, 451 (9th Cir. 2018); *Usanovic*, 775 F. Supp. 3d at 1140.) Absent these types of allegations showing that Compass controlled the manner and means <u>of the telephone calls</u> placed by its real estate agents, Plaintiff cannot establish an agency relationship for purpose of her TCPA claims. Nor is Plaintiff able to establish any of the three agency theories for TCPA liability: actual authority, apparent authority, and ratification. *See Jones II*, 887 F.3d at 453 n.3.

### 2. *Plaintiff Fails to Show Compass Real Estate Agents Had Actual Authority to Place Calls in Violation of the TCPA*

Plaintiff fails to allege sufficient facts to show Compass can be held vicariously liable for any of the calls at issue based on actual authority. Actual authority is limited to actions "specifically mentioned to be done in a written or oral communication" or "consistent with" a principal's "general statement of what the agent is supposed to do." (Mot. at 10 (citing *Salyers v. Metro. Life Ins. Co.*, 871 F.3d 934, 940 (9th Cir. 2017.)) As such, to support a plausible claim for

---

[2] In fact, Plaintiff's ***entire Opposition*** does not contain a single citation to any specific paragraph of her FAC.

actual authority for the alleged TCPA violations, Plaintiff must allege facts to show that Compass authorized its agents to place calls to individuals on the National Do Not Call Registry and Internal Do Not Call List.

As a preliminary matter, and as explained in Compass's Motion, Plaintiff's actual authority theory of vicarious liability is foreclosed by controlling Ninth Circuit authority. (Mot. at 11 (citing *Jones v. Royal Admin. Servs., Inc.*, 866 F.3d 1100 (9th Cir. 2017) ("*Jones I*"), *opinion amended and superseded*, 887 F.3d 443 (9th Cir. 2018) ("*Jones II*")).) In *Jones II*, the Ninth Circuit held that a principal is not liable for an alleged agent's phone calls under an actual authority theory when the principal instructs the agent not to make calls that violate the law. 887 F.3d at 449–50. That is precisely what Compass did here when it instructed its real estate agents, in writing, "not… to call any person listed on the Federal Trade Commission's National Do Not Call Registry" (Mot. at 10–11 (citing Ramsey Decl., ¶ 6, Ex. C at 7) and "not [to] contact (email, text, phone) anyone who has requested not to be contacted by you or Compass." (*Id.* at 11 (citing Ramsey Decl., ¶ 6, Ex. C at 7); *see also generally id.* (citing Ramsey Decl., ¶ 8, Ex. E at 1 ("Agent agrees to comply with all federal, state, and local laws, statutes, rules, and regulations . . . including . . . 'do not call' laws.").) Plaintiff inexplicably ignores this binding precedent in the Ninth Circuit—citing instead to authority from the Seventh Circuit for the proposition that this "argument has already been rejected." (Opp. at 13–14 (citing *United States v. Dish Network L.L.C.*, 954 F.3d 970, 975 (7th Cir. 2020); *Moore v. Club Exploria, LLC*, No. 1:19-CV-02504, 2025 WL 2755076, at *11 (N.D. Ill. Sept. 26, 2025.)) These cases are inapposite, however, as "[i]n the absence of contravening caselaw from the Supreme Court, this Court is bound by Ninth Circuit precedent." *Theis v. Intermountain Educ. Serv. Bd. of Directors*, No. 2:25-CV-00865-HL, 2025 WL 2406871, at *11 n.10 (D. Or. Aug. 20, 2025).

Even absent the Ninth Circuit's decision in *Jones II*, Plaintiff does not allege a single fact showing that Compass provided any written or oral authority to real estate agents to place calls that violated the TCPA. Plaintiff makes much ado about the allegations in the FAC related to Compass's marketing and branding. (Opp. at 11–12.) However, at most—and as Plaintiff herself

admits—all these allegations show is that Compass real estate agents were "authorized to act for Compass in initiating telemarketing communications and promoting its products." (Opp. at 12.) That is not the same as alleging that Compass authorized its agents to initiate telemarketing communications *in violation of the TCPA*, by instructing them to place telephone calls to individuals on the National Do Not Call Registry and Internal Do Not Call List.[3] No such facts are alleged in the FAC.

### 3. *Plaintiff Fails to Show Compass Real Estate Agents Had Apparent Authority to Place Calls in Violation of the TCPA*

Plaintiff fails to allege sufficient facts to show Compass can be held vicariously liable for any of the calls at issue based on apparent authority. "Apparent authority arises from the principal's manifestations to a third party that supplies a reasonable basis for that party to believe that the principal has authorized the alleged agent to do the act in question." (Mot. at 11 (citing *NLRB v. Dist. Council of Iron Workers of Cal. Vicinity,* 124 F.3d 1094, 1099 (9th Cir. 1997.))

In her Opposition, Plaintiff contends that "Compass manifested its authorization by publicly listing Olson and Sanger as its agents on its website, by requiring them to identify themselves as Compass agents in every solicitation, by permitting them to use Compass's trade name, and by providing them training and marketing materials accordingly." (Opp. at 17; *see also id.* at 18 ("Here, by contrast, Compass affirmatively authorized and indeed *required* the use of its name by its agents, placed them on its website, gave them branded materials, trained them, and regulated their outbound marketing.")) Plaintiff again stretches the allegations in the FAC past their breaking point. As with her claim of actual authority, the most these allegations support is

---

[3] Plaintiff's argument that Compass real estate agents had "implied actual authority" to place the calls in question fails for the same reason. "Implied authority arises when an agent, to whom the principal has given direct authorization to complete a particular act on behalf of the principal, performs acts incidental to the authorized endeavor, and the authority to perform those incidental acts is inferred from the original grant of authority." *Ionian Corp. v. Country Mut. Ins. Co.*, 744 F. Supp. 2d 1104, 1109 (D. Or. 2010). The fact that "[o]utbound telephone solicitation of potential clients is 'incidental to' and 'reasonably necessary to accomplish' [Compass's] marketing mandate" (Opp. at 11) does not mean that outbound telephone solicitation of potential clients *in violation of the TCPA* is—or that the placing of calls to individuals on the National Do Not Call Registry and Internal Do Not Call List was "inferred from [Compass's] original grant of authority."

that Compass real estate agents had apparent authority to "act for Compass in initiating telemarketing communications and promoting its products." Plaintiff does not point to any manifestation by Compass to her (or any third party) that would have supplied a reasonable basis to believe that real estate agents were authorized to place calls *in violation of the TCPA*.

What's more, and as explained in the Motion, the fact that the real estate agents in question identified themselves as calling from Compass is inapposite, as "[a]pparent authority cannot be established merely by showing that [the agent] claimed authority or purported to exercise it." (Mot. at 12 (citing *NLRB,* 124 F.3d at 1099.)) Rather, apparent authority must be established by "proof of something said or done by the [principal]" and "on which [the third party] reasonably relied." (*Id.*) On that score, assuming that Compass's listing the real estate agents on its website was sufficient to constitute the purported manifestation from Compass that its real estate agents were authorized to make calls in violation of the TCPA (it is not), Plaintiff never actually alleges in the Complaint that she saw the bios for Rachel Olson or Ansel Sanger on Compass's website. As a result, she cannot allege that she saw a representation from Compass on which she relied. This is fatal to her claim. *See Thomas v. Taco Bell Corp*., 582 Fed. Appx. 678, 679-680 (9th Cir. 2014) (holding the plaintiff failed to show she "reasonably relied, much less to her detriment" on any apparent authority the defendant allegedly cloaked on the purported agent).

### 4.    *Plaintiff Fails to Show Compass Ratified Calls Placed in Violation of the TCPA*

Plaintiff does not allege facts sufficient to support her claim that Compass can be vicariously liable based on its alleged ratification of any of the calls at issue. Ratification is "the affirmance of a prior act done by another, whereby the act is given effect as if done by an agent acting with actual authority." (Mot. at 12 (citing *Kristensen v. Credit Payment Servs., Inc*., 879 F.3d 1010, 1014 (9th Cir. 2018.)))

In her Opposition, Plaintiff contends that Compass "ratified Olson and Sanger's conduct by accepting the lead and referrals generated as a result of Olson and Sanger's illegal telemarketing conduct" and by "continu[ing] to receive commissions and fees from transactions procured through such calling activities." (Opp. at 20.) As a threshold matter, Plaintiff does not allege that

any of the calls to her ever resulted in a transaction—indeed, she cannot allege that because she impersonated the actual owner of the property about which the agents were calling. Because no transaction was consummated as a result of the alleged calls to Plaintiff, Compass did not receive any commissions, fees, or other benefit from those calls—and thus cannot be said to have ratified the calls by accepting the fruits of the purported conduct.

Moreover, and as set forth in the Motion, "[e]ven if a principal ratifies an agent's act, '[t]he principal is not bound by a ratification made without knowledge of material facts about the agent's act unless the principal chose to ratify with awareness that such knowledge was lacking."(Mot. at 12 (citing *Kristensen*, 879 F.3d at 1014 (quoting Restatement (Third) of Agency § 4.01 cmt. b.))) "A principal has assumed the risk of lack of knowledge if 'the principal is shown to have had knowledge of facts that would have led a reasonable person to investigate further, but the principal ratified without further investigation.'" (*Id*. (citing *Kristensen*, 879 F.3d at 1014 (quoting Restatement (Third) of Agency § 4.06 cmt. d.)))  Plaintiff argues that "the internal do not call requests and repeated calls from multiple Compass agents about the same property over the span of almost a year should have given Compass pause and cause to investigate further." (Opp. at 20.) However, and as set forth above, Compass does not "dictate Agent's day-to-day performance of the Services (e.g., schedule, hours, meetings, time off, etc.)." (Ramsey Decl., ¶ 8, Ex. E at 2.)  This means that Compass does not supervise the real estate agents' telephone calls and does not control the manner and means by which real estate agents place those telephone calls. As such, the fact that "Olson *herself* received and ignored Plaintiff's company-specific do not call request"; that "the requests were ignored"; and that real estate agents were "calling numbers . . . using illegal Caller IDs to place the calls" does not mean, as Plaintiff contends, that **Compass** "receive[d] repeated red flags and d[id] nothing." (Opp. at 21.)  To the contrary, Plaintiff alleges no facts that Compass ever had actual knowledge of any of the purported calls at issue[4] or ever chose to ratify any of the calls at issue with awareness that it lacked knowledge of material facts.

---

[4] Plaintiff's contention that Olson's receipt of the do-not-call request is imputed to Compass under Restatement (Third) of Agency § 5.03 and *Container Recovery, Inc. v. Shasta Nw., Inc.*, No. CIV. 05-1749-PK, 2007 WL 1724937 (D. Or. June 11, 2007), presupposes the very agency relationship

Plaintiff also contends that Compass ratified the calls at issue because it "did not discipline, reprimand, or terminate Olson or Sanger." (Opp. at 19.) As a preliminary matter, Compass has no basis on which to conclude that its agents engaged in any wrongful conduct warranting discipline. As noted above, Plaintiff appears to have impersonated the actual owner of the property about which the agents were calling. Under these circumstances, Compass cannot be expected to reprimand or discipline its agents for conduct that has not been established to be wrongful—particularly where the alleged calls never resulted in any transaction and the recipient of those calls was not who she purported to be.

Setting that aside, Plaintiff's argument fails as a matter of law. A seller does not ratify the actions of a third-party telemarketer merely because it declined to "discipline, reprimand, or terminate" them. Indeed, the very authority Plaintiff cites in her Opposition makes clear that "a seller would be responsible under the TCPA for the unauthorized conduct of a third-party telemarketer that is otherwise authorized to market on the seller's behalf if the seller knew (or reasonably should have known) that the telemarketer was violating the TCPA on the seller's behalf and the seller *failed to take effective steps within its power to force the telemarketer to cease that conduct*." (Opp. at 19 (citing *In re DISH Network, LLC*, 28 F.C.C Rcd. 6574, 6592 (2013)) (emphasis added).) It is therefore left to the seller to determine the best steps to take to ensure that the TCPA violations in question stop—and nowhere is a seller required to take the drastic and extreme step of terminating the caller. What's more, Plaintiff mischaracterizes the allegations in

---

that Compass disputes and that Plaintiff has failed to adequately plead. Plaintiff's "willful ignorance" theory of ratification fares no better. Plaintiff contends that Compass's own manuals required agents to "maintain, regularly update, and check" do-not-call lists, and that Compass's purported failure to audit or enforce compliance with those policies constitutes the "willful ignorance" sufficient for ratification under *Henderson v. United Student Aid Funds, Inc.*, 918 F.3d 1068, 1075 (9th Cir. 2019). (Opp. at 21.) But the existence of written policies expressly instructing agents to comply with do-not-call requirements is evidence that Compass took affirmative steps to prevent the very violations that Plaintiff alleges—not that Compass was willfully ignorant of them. The willful ignorance standard requires a showing that "the principal is shown to have had knowledge of facts that would have led a reasonable person to investigate further, but the principal ratified without further investigation." *Kristensen*, 879 F.3d at 1014 (quoting Restatement (Third) of Agency § 4.06 cmt. d). Plaintiff does not allege any facts showing that Compass—as distinguished from the individual real estate agents—had knowledge of any facts prior to this lawsuit that would have triggered a duty to investigate further.

her own FAC. Plaintiff asserts that "Compass itself admits that, *to this day*, it has not reprimanded, disciplined, or otherwise warned Olson or Sanger about their outbound calling practices, or their plain failure to honor the Plaintiff's request to be placed on Compass's company-specific do not call list." (*Id.* (emphasis added.)) That is not the case. As set forth in the Motion, the only representation that Compass has made—and the only allegation included in the FAC—regarding any disciplinary actions taken against the agents who called her number is that, "*[p]rior to the filing of the Complaint*, Rachel Olson and Ansel Sanger have not been reprimanded, disciplined, or otherwise warned concerning their outbound calling or texting practices." (FAC ¶ 70 (emphasis added).) Accordingly, in order to allege a ratification theory of vicarious liability based on this allegation, Plaintiff would need to allege facts sufficient to show that Compass knew, *prior to the filing of the Complaint*, that Rachel Olson or Ansel Sanger were making calls to numbers on the NDNCR or IDNCL—and declined to take any action. Plaintiff does not, and cannot, allege any such facts.

## C.    <u>Compass Cannot Be Held Directly Liable For The Alleged Calls To Plaintiff</u>

Perhaps recognizing the weakness of her vicarious liability theory, Plaintiff argues in her Opposition that Compass can alternatively be held "independently liable as a 'seller' under 47 U.S.C. § 227(c)(5) itself." (Opp. at 22.) However, courts, and the FCC, have consistently held that direct liability under the TCPA applies only to persons or entities that directly "make or initiate" calls, *which requires "tak[ing] the steps necessary to physically place the call.*" *Sheski v. Shopify (USA) Inc.*, No. 19-CV-06858-HSG, 2020 WL 2474421, at *2 (N.D. Cal. May 13, 2020) (analyzing claim under section 227(b) of TCPA) (citing *In re Dish Network, LLC*, 28 F.C.C. Rcd. at 6583 ¶ 26 (emphasis added)). Here, the persons who "t[ook] the steps necessary to physically place the call[s]" are Olson and Sanger. As such, only <u>they</u> can be sued under a theory of direct liability.[5]

---

[5] Indeed, Plaintiff amended the Complaint to add Olson and Sanger as named defendants in order to do just that.

**DEFENDANTS COMPASS WASHINGTON, LLC AND COMPASS, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS**

-10-

Plaintiff argues that section 227(c)(5)'s "on behalf of' language . . . extends liability *beyond* the entity that physically placed the call to the entity whose goods or services were being marketed on the call." (Opp. at 22.)  This argument, however, is based on a fundamental misreading of the statute. Plaintiff is correct that section 227(c)(5) allows a person who has received telephone calls "by or on behalf of the same entity in violation of the regulations" to bring an action "to enjoin such violation" and "to recover for actual monetary loss from such a violation, or to receive up to $500 in damages for each such violation."  However, section 227(c)(5) does not specify against whom such an action is to be directed. For this, reference to the specific regulation that was purportedly violated, and which served as the predicate violation of section 227(c)(5), is instructive. Here, Plaintiff brings three separate causes of action under Section 227(c)(5)—each based on a purported violation of a different TCPA regulation:  (1) the National Do Not Call Registry regulation, 47 C.F.R. 64.1200(c)(2) ("No person or entity shall *initiate* any telephone solicitation to . . . [a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry . . . ." (emphasis added)); (2) the Internal Do-Not-Call List regulation, 47 C.F.R. § 64.1200(d) ("No person or entity shall *initiate* . . . any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive such calls made by or on behalf of that person or entity." (emphasis added)); and (3) the Caller ID regulation, 47 C.F.R. § 64.1601(e) ("Any person or entity that engages in telemarketing [which is defined to mean 'the *initiation* of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services'] must transmit caller identification information." (emphasis added)). Just as with section 227(b), each of these regulations "targets only entities that 'make' or 'initiate' the call." (Opp. at 22.)[6]  Accordingly, and contrary to Plaintiff's contention, section 227(c)—which borrows its "violations" from these regulations—is not "[u]nlike section 227(b)." (*Id.*)  For this reason, courts assessing claims under section 227(c)

---

[6] Plaintiff's additional claim that Compass—not just Olson or Sanger—can be held directly liable under 47 C.F.R. § 64.1200(d) (Opp. at 25–26) fails for this same reason.

**DEFENDANTS COMPASS WASHINGTON, LLC AND COMPASS, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS**

-11-

have applied the same rule as courts assessing claims under section 227(b)—namely, that direct liability under the TCPA attaches only to persons or entities that directly "make" or "initiate" the calls at issue. S*ee Sheski*, 2020 WL 2474421, at \*2; *see also Naiman v. Freedom Forever, LLC*, No. 19-CV-00256-JSC, 2019 WL 1790471, at \*4 (N.D. Cal. Apr. 24, 2019) (finding the plaintiff's claims under TCPA section 227(b) and (c) were deficient for the same reasons).[7]  The Court should do the same here.

### D.     47 C.F.R. § 64.1601(e) Is Not Enforceable Through the Private Right of Action in 47 U.S.C. § 227(c)(5) And, Even If It Was, Plaintiff Has Failed To State A Claim

As set forth in the Motion, Courts in this District and elsewhere have overwhelmingly found that 47 C.F.R. § 64.1601(e) does not confer a private right of action.  (Mot. at 14 (citing *Griffin v. American-Amicable Life Ins. Co. of Tex.*, 2024 WL 4333373, at \*5 (D. Or. Sept. 27, 2024); *Meyer v. Cap. All. Grp.*, No. 15-CV-2405-WVG, 2017 WL 5138316, at \*17 (S.D. Cal. Nov. 6, 2017); *Worsham v. Travel Options, Inc.*, No. JKB-14-2749, 2016 WL 4592373, at \*4 (D. Md. Sept. 2, 2016), *aff'd,* 678 F. App'x 165 (4th Cir. 2017); *Dobronski v. Fam. First Life, LLC*, No. 22-cv-12039, 2024 WL 575858, at \*18–19 (E.D. Mich. Jan. 19, 2024), *report and recommendation adopted in part, rejected in part*, No. 22-cv-12039, 2024 WL 1342668 (E.D. Mich. Mar. 29, 2024); *Dobronski v. Tobias & Assocs.*, No. 5:23-cv-10331, 2023 WL 7005844, at \*7–8 (E.D. Mich. Sept. 25, 2023), *report and recommendation adopted in part sub nom. Dobronski v. Tobias & Assocs., Inc.*, No. 23-10331, 2024 WL 1174553 (E.D. Mich. Mar. 18, 2024); *Dobronski v. Total Ins. Brokers*, LLC, No. 21-10035, 2021 WL 4452218, at \*2–3 (E.D. Mich.

---

[7] Plaintiff's citation to *Katz v. Allied First Bank, SB*, No. 22 c 05277, 2026 WL 636723 (N.D. Ill. March. 6, 2026) does not change this conclusion. As a preliminary matter, the court in *Katz* explicitly rejected the idea that a seller could be held directly liable for a call initiated by a third-party telemarketer. *Id.* at \*6 ("Because there is no dispute that the evidence establishes that Iconic placed the calls at issue, the court finds that no reasonable jury could conclude that Allied is directly liable."). And while the court in *Katz* questioned "whether the FCC was correct to 'leave open the possibility that it could interpret section 227(c) to provide a broader standard of vicarious liability for do-not-call violations' than for robocalling violations under section 227(b)," when one of its commissioners proposed in the *Dish Network* dissent that "under section 227(c), third-party liability exists whenever a telemarketer initiates a call on a seller's behalf, even if that telemarketer is not under the seller's control," *id.* at \*7, what a district court in a different circuit "opined" about in an unpublished opinion before "decid[ing] it did not need to reach the issue" (Opp. at 23) is nonbinding both as dicta and out-of-circuit authority.

Sept. 29, 2021); *Dobronski v. SunPath Ltd.*, No. 19-13094, 2020 WL 8840311, at *6–7 (E.D. Mich. July 27, 2020)); *Dobronski v. Selectquote Ins. Servs.*, 462 F. Supp. 3d 784, 789–90 (E.D. Mich. 2020.))  At most, the conflicting authority highlighted by Plaintiff demonstrates there is non-binding authority to support both sides of the issue, but apparently, no controlling authority from the Ninth Circuit.

More importantly, and as explained in the Motion, the table included in Paragraph 43 of the FAC—and Plaintiff's allegations in Paragraph 44—make clear that both Twilio and AT&T "provided accurate CNAM functionality" for Olson and Sanger. (FAC ¶ 44.)  Confusingly, Plaintiff contends in her Opposition that "the Caller IDs transmitted plainly did not allow the Plaintiff to make a *company-specific* internal do not call request to Compass" (Opp. at 31)—***despite her entire second cause of action being predicated on her allegations that she made successful do not call requests to these telephone numbers***, and that those internal do not call requests were ignored.  Plaintiff cannot have it both ways. Nor—with regard to the allegations concerning the as-yet-to-be identified "Leah" and "Anella"—can Compass be held vicariously liable for the calls of individuals it has no relationship with at all, let alone an agency relationship.

## III.    CONCLUSION

For these reasons, the Court should dismiss the FAC as to Compass with prejudice.

Dated: May 5, 2026

**TADJEDIN THOMAS & ENGBLOOM LAW GROUP LLP**

By:    */s/ Julie Engbloom*
JULIE ENGBLOOM, OSB No. 066988
juliee@ttelawgroup.com
1211 NW Glisan Street, Suite 203
Portland, Oregon 97209
Telephone: 503-546-0675

VERA WARREN, OSB No. 194747
veraw@ttelawgroup.com
1211 NW Glisan Street, Suite 203
Portland, Oregon 97209
Telephone: 503-894-9944

**SHEPPARD, MULLIN, RICHTER & HAMPTON LLP**

CALON NYE RUSSELL, OSB No. 094910
crussell@sheppardmullin.com
4 Embarcadero Ctr, Suite 1700
San Francisco, CA 94111
Telephone: 415-774-3159

DANE C. BRODY CHANOVE, *admitted pro hac vice*
dbrodychanove@sheppard.com
12275 El Camino Real, Suite 100
San Diego, California 92130-4092
Telephone: 858-720-8900
Facsimile: 858-509-3691

JAY T. RAMSEY, *admitted pro hac vice*
jramsey@sheppardmullin.com
1901 Avenue of the Stars
Suite 1600
Los Angeles, California 90067
Telephone: 310-228-3700
Facsimile: 310-228-3701

*Attorneys for Defendants*
COMPASS WASHINGTON, LLC;
COMPASS, INC.

DEFENDANTS COMPASS
WASHINGTON, LLC AND COMPASS,
INC.'S REPLY IN SUPPORT OF        -14-
MOTION TO DISMISS

## <u>CERTIFICATE OF COMPLIANCE</u>

This brief complies with the applicable word-count limitation under LR 7-2(b) because it contains 5,181 words, including headings, footnotes, and quotations, but excluding the caption, table of contents, table of cases and authorities, signature block, exhibits, and any certificates of counsel.

*/s/ Julie Engbloom*
Julie Engbloom

DEFENDANTS COMPASS
WASHINGTON, LLC AND COMPASS,
INC.'S REPLY IN SUPPORT OF    -16-
MOTION TO DISMISS

TADJEDIN THOMAS & ENGBLOOM LAW GROUP LLP
1211 NW Glisan Street, Suite 203
Portland, Oregon 97209